IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

AQUA HARVESTERS, INC.; BAY HEAD, INC.;
C. SEAMAN SEAFOOD, LTD.; DOXSEE SEA
CLAM CO., INC.; EDGAR SEAFOOD PRODUCTS,
INC.; FERNANDEZ & FAMILY INC.;  FREEPORT
SEA CLAM CO., INC.; LADY KIM, INC.; LYONS
FISHERIES, INC.; OFF SHORE DIVING CORP.;
PEK CLAM CO., INC.; SMJ PRODUCTS CORP.;
ST. PETER DOCK, INC.; VERBEKE, INC.;
WINTER HARBOR BRANDS, INC.; AMERICAN
 PRIDE SEAFOOD, LLC; LET VESSELS, LLC;
TMT VESSELS (NY), LLC; ATLANTIC CAPES
FISHERIES, INC.; GALILEAN SEAFOODS, LLC;
OCEANSIDE PACKERS, INC.; and SEAWATCH
INTERNATIONAL, LTD.,

                              Plaintiffs,

                  - against -

The **NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION** and
**BASIL SEGGOS,** both individually, and in his
capacity as Commissioner of the New York State
Department of Environmental Conservation,

                              Defendants.

-----------------------------------------------------------------------X

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

Case No.: 2017-CV-_____   MAR 02 2017

LONG ISLAND OFFICE

# CV-17 1198

AZRACK, J.

TOMLINSON, M

**COMPLAINT**

        Plaintiffs, Aqua Harvesters, Inc.; Bay Head, Inc.; C. Seaman Seafood, Ltd.; Doxsee Sea Clam

Co., Inc.; Edgar Seafood Products Inc.; Fernandez & Family, Inc.; Freeport Sea Clam Co., Inc.; Lady

Kim, Inc.; Lyons Fisheries, Inc.; Off Shore Diving Corp.; PEK Clam Co., Inc.; SMJ Products

Corporation; St. Peter Dock, Inc.; Verbeke, Inc.; Winter Harbor Brands, Inc.; American Pride

Seafood, LLC; LET Vessels, LLC; TMT Vessels (NY), LLC; Atlantic Capes Fisheries, Inc.; Galilean

Seafoods, LLC; Oceanside Packers, Inc., and Seawatch International, Ltd. (collectively "plaintiffs"),

1

by their attorney, complaining of defendants: the New York State Department of Environmental Conservation (the "Department") and Basil Seggos, both in his individual capacity and in his official capacity as Commissioner of the New York State Department of Environmental Conservation (collectively, the "defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.  This action is brought seeking declaratory judgment pursuant to Title 28, U.S.C., Sections 2201 and 2202, and the provisions of Title 42 United States Code ("U.S.C."), Section 1983, by reason of the defendants' unlawful denial of plaintiffs' rights under color of law by the enforcement administrative agency regulations and a state law.

2.  All parties to this controversy are citizens of the United States whether as corporate entities, or as governmental agencies or individuals. The plaintiffs, either reside or do business in interstate commerce from the states of New York, New Jersey, Rhode Island or Delaware. The defendants are, on information and belief, a New York State governmental agency, and its chief executive officer who resides in New York.

3.  Plaintiffs seek to vindicate rights protected under the Supremacy Clause, the Commerce Clause, and the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and seek a declaration of the legal rights and relations of the parties in regard to the lawfulness and continued viability of a state statute (E.C.L. § 13-0349(1)) and certain administrative agency regulations promulgated at Title 6, Part 43, Subparts 43-2 and 43-3 of the New York Code Rules and Regulations ("N.Y.C.R.R."), each of which affects New York State's Atlantic Ocean Surf Clam/Ocean Quahog fishery (the "Surf Clam Fishery"

or "Fishery").

4.      Plaintiffs, who are all corporations engaged in the interstate commercial surf clam fishery

industry, challenge:

a.      recent amendments to 6 N.Y.C.R.R., §§ 43-2.6(b), 43-2.8(e), and 43-3.5(e), that
restrict the use of fishing vessels in the Surf Clam Fishery to the harvest of one
Individual Fishing Quota allocation ("IFQ allocation"), which is a measure of the
annual amount of surf clams that any harvesting company holding a New York
Atlantic Ocean Surf Clam Permit ("Surf Clam Permit") may harvest from the Surf
Clam Fishery (hereinafter referred to as the "Single Permit Rule"), and;

b.      regulations found at 6 N.Y.C.R.R., § 42-2.4(d) that prohibit harvesting companies
who hold "resident" Surf Clam Permits from using fishing vessels owned by non-
New York entities or individuals (hereinafter "out-of-state vessels") to harvest their
IFQ allocations (the "Residency Rule"), and;

c.      section 13-0349 of the New York Environmental Conservation Law ("E.C.L.") that
limits the length of any new fishing vessel to be used in New York Surf Clam Fishery
to not more than 70-feet in overall length (the "Seventy-Foot Rule").

5.      This action seeks declaratory judgment pursuant to Title 28 U.S.C., §§ 2201, and pursuant

to 42 U.S.C., § 1983, that the laws at issue herein unlawfully restrict or prohibit the use of

vessels within New York waters that are documented and "fishery" endorsed under the

Shipping Act (46 U.S.C., §§ 101 *et seq.* & 12113)(hereinafter "fishery endorsed" vessels) for

the purpose of harvesting surf clams and, therefore, are pre-empted by the laws of the United

States and are null and void.

6.      Plaintiffs also seek permanent injunctive relief pursuant to Title 28 U.S.C., § 2202, and

pursuant to Title 42 U.S.C., § 1983, barring the defendants from enforcing:

a.      the Single Permit Rule insofar as it restricts the use, or the leasing for use, within the
Fishery of any vessel, or any fishery endorsed vessel, in the harvest of surf clams
from New York waters in any year;

b.      the Residency Rule insofar as it purports, or is applied by the defendants, to restrict

3

the use or leasing for use within the Fishery of any out-of-state vessel by any New York harvesting company holding a Surf Clam Permit, and;

c.    the Seventy-Foot Rule as it purports to restrict the use or the "replacement" for use of any fishery endorsed vessel in the harvest of surf clams from New York waters based on a vessel length restriction.

## THE PARTIES

7.    At all times mentioned herein plaintiffs Aqua Harvesters, Inc. ("Aqua Harvesters"); Bay Head, Inc. ("Bay Head"); C. Seaman Seafood, Ltd. ("C. Seaman"); Doxsee Sea Clam Co., Inc. ("Doxsee Sea Clam"); Freeport Sea Clam Co., Inc. ("Freeport Sea Clam"); Lady Kim, Inc. ("Lady Kim"); Lyons Fisheries, Inc. ("Lyons Fisheries"); Oceanside Packers, Inc. ("Oceanside Packers"); Off Shore Diving Corp. ("Off Shore Diving"); PEK Clam Co., Inc. ("PEK Clam"); St. Peter Dock, Inc. ("St. Peter Dock"); TMT Vessels (NY), LLC ("TMT Vessels"); and Winter Harbor Brands, Inc. ("Winter Harbor Brands"), were and are New York business corporations or limited liability companies with offices for doing business at 144 South Country Road, County of Suffolk, State of New York.

8.    At all times hereinafter mentioned plaintiff Edgar Seafood Products, Inc. ("Edgar Seafood") and Fernandez & Family, Inc. ("Fernandez & Family") were and are New York business corporations with offices for doing business at 31 Greene Street, Fifth Floor, City of New York, State of New York.

9.    At all times hereinafter mentioned plaintiff, SMJ Products Corp. ("SMJ Products") was and is a New York business corporation with offices for doing business 37 Hawley Avenue, West Islip, in the County of Suffolk, State of New York.

10.    At all times hereinafter mentioned plaintiff Verbeke, Inc. ("Verbeke") was and is a New

York business corporation with offices for doing business at 85 Ocean Avenue, Bayport, in the County of Suffolk, State of New York.

11.     The plaintiffs identified at paragraphs "7", "8", "9" and "10" above shall, collectively, be referred to as the "Harvesting Companies".[1]

12.     At all times hereinafter mentioned plaintiff LET Vessels, LLC ("LET Vessels") was and is a New Jersey limited liability company with offices for doing business at 1065 Main Street, Mayetta, State of New Jersey.

13.     At all times hereinafter mentioned plaintiff Atlantic Capes Fisheries, Inc.  ("Atlantic Capes Fisheries") was and is a New Jersey business corporation with offices for doing business at 985 Ocean Drive, Cape May, State of New Jersey, and does business through one of its divisions - Plaintiff Galilean Seafoods., LLC ("Galilean Seafoods"), with offices at 16 Broadcommon Road, Bristol, State of Rhode Island.

14.     At all times hereinafter mentioned plaintiff Seawatch International, Ltd. was and is a Delaware business corporation with offices for doing business at 242 Rehoboth Boulevard, Milford, State of Delaware.

15.     Upon information and belief the Defendant New York State Department of Environmental Conservation (the "Department") is an agency of the State of New York with offices at 625 Broadway, Albany, New York.

16.     Upon information and belief defendant Basil Seggos ("Seggos") is a natural person and

---

1.     Two other harvesting companies participating in the Fishery are not parties to this action. These are: Ocean Fresh Seafood, Inc., and Shellfish, Inc.  Where the context of the pleadings refers to all harvesting companies regardless of their status as plaintiffs, the phrase "harvesting companies" (lower-case) shall be used.

resident of the County of Albany, State of New York, who has been appointed as Commissioner of the New York State Department of Environmental Conservation and who, in his official capacity, has offices at 625 Broadway, Albany, New York.  Seggos is made a party to this action in both his official capacity and his individual capacity.

## JURISDICTION AND VENUE

17.   Jurisdiction lies in this Court: (A) pursuant to 28 U.S.C., § 1333(1), in that the causes of action pleaded herein, and the state laws and regulations challenged hereby, affect the use of vessels of the United States, and; (B) pursuant to 28 U.S.C., § 1331 in that the use of the vessels at issue herein are both documented and hold endorsements to operate in the fisheries of the United States pursuant to the Shipping Act (46 U.S.C., §§ 106, 12113) and that the state laws and regulations challenged hereby - either facially or as applied - violate the Supremacy Clause, the Commerce Clause, and the Privileges and Immunities Clauses of both Article IV and the 14th Amendment, and the Equal Protection Clause of the 14th Amendment to the United States Constitution.

18.   Venue lies in this Court pursuant to 28 U.S.C., § 1391, subdivisions (a) and (c), as a substantial part of the events or omissions giving rise to this action occurred within this judicial district, and as a substantial part of the property that is the subject of this action is located within this judicial district, and as various of the corporate plaintiffs are residents of the County of Suffolk, State of New York.

## THE NATURE OF THIS CASE

19.   This action challenges the constitutionality of recent amendments to regulations existing state law and regulations affecting the New York Atlantic Surf Clam Fishery that are administered

by the Department of Environmental Conservation.  The State's regulations affecting the Fishery are found at 6 N.Y.C.R.R., Part 43, Sub-parts 43-2 & 43-3.

20.    On July 27, 2016, the Department adopted the Single Permit Rule, a group of regulations that for materially change the nature of the harvesting regulations for the Fishery by limiting the use of any one fishing vessel in the Fishery to a specified quantity of surf clams (*Spisula solidissima*) that may be taken in any calendar year. The adoption of the Single Permit Rule was publicly noticed in the *New York Register* on July 27, 2016 under Notice of Adoption (ENV-50-15-00003-A). (*Exhibit "A", hereto*)

21.    By the terms of the Single Permit Rule all fishing vessels, including fishery endorsed vessels authorized by the Shipping Act (46 U.S.C., §§ 106, 108, 116 & 12113) to participate in the nation's fisheries, are unlawfully limited in their use in New York's Surf Clam Fishery.

22.    The effect of the Single Permit Rule is to deny vessel owning companies the ability to fully exercise the rights granted to their vessels under the Shipping Act to lease them for use by the harvesting companies in the Fishery and, concomitantly, to deny the harvesting companies the right to lease or use such vessels in the Fishery.

23.    This action also challenges the constitutionality of the "Residency Rule" (6 N.Y.C.R.R., § 43-2.4(d)), a regulation that prohibits surf clam vessels owned by non-New York individuals or companies from being used in the Fishery by harvesting companies holding an Atlantic Ocean Surf Clam/Ocean Quahog harvesting permit (hereinafter, "Surf Clam Permit" or "Permit".

24.    Finally, this action challenges the constitutionality of the "Seventy-Foot Rule" (section 13-0349 of the New York Environmental Conservation Law ("E.C.L.")), a law that restricts the

7

length of "new" vessels that may be used in New York waters to a length of 70 feet or less and violates rights guaranteed to fishery endorsed vessels to be used in the Surf Clam Fishery. The enforcement of this law denies the vessel-owning companies the right to use or lease for use their fishery endorsed vessels in New York if they exceed seventy feet in length, and necessarily denies harvesting companies the ability to use such vessels to harvest their IFQ allocations, in violation of federal law and the United States Constitution.

25.    Each of these laws, either facially or in their application, violate the Supremacy Clause, the Commerce Clause, and the Privileges and Immunities Clauses of both Articles IV and the 14th Amendment, and the Equal Protection Clause of the 14th Amendment to the United States Constitution, and are pre-empted and void as being contrary to the provisions of the Shipping Act (46 U.S.C., §§ 101 *et seq.*,) and, more particularly, section 12113 thereof.

## I.    The Present Regulatory Structure of the Surf Clam Fishery:

26.    The nature of harvesting within the Fishery, and the regulation of that industry by the Department, has changed over the years. A more fulsome history of the New York Surf Clam Fishery is provided in the accompanying declaration of J. Lee Snead, Esq., dated February 15, 2017, and submitted in support of the Complaint and in support of plaintiffs' request for injunctive relief (the *"Snead Declaration,"* ¶¶ 9-67). Certain aspects and concepts of the regulations are addressed immediately below.

27.    New York's Atlantic Ocean Surf Clam Fishery is governed by Article 11, 13 and 71 of the New York Environmental Conservation Law. The Department administers the Fishery by regulations (6 N.Y.C.R.R., Sub-Part 43-2) and in conjunction with a Fishery Management Plan (FMP) that has the force of regulations for those portions of it that have not been

8

otherwise pre-empted by state law.

28. The Surf Clam Fishery is a "limited entry" fishery, with seventeen existing harvesting companies, all of which have been harvesting in the Fishery since at least 1993. No new companies are allowed to enter the Fishery under Departmental regulations. (6 N.Y.C.R.R., Sub-Part 43-3.)

29. The Harvesting Companies actively harvest surf clams within the New York waters of the Atlantic Ocean by use of mechanical/hydraulic dredges. Surf clam vessels are fitted out to harvest only surf clams and, due to the nature, size, and weight of the equipment needed, once configured as a surf clam vessel these vessels cannot be easily converted for use in other types of fisheries.

30. For these reasons, only as many vessels as are needed by the harvesting companies to take their annual state-authorized allocations of surf clams actually exist within the Fishery. As is more fully described below less than half of the Harvesting Companies own the vessels used to harvest their IFQ allocations. Heretofore, the Harvesting Companies who did not own usable vessels were able to lease vessels for use from other vessel-owning company plaintiffs under Departmental regulations.

   A.   **The Surf Clam Permit System.**

31. Under Fishery regulations no company can harvest without first having a Surf Clam Permit issued by the Department. While the various harvesting companies own the permits, the regulations require that a particular vessel be identified to each permit. There is no other fishery in New York that regulates the amount of fish or shellfish that any *vessel* may take in any one year. Rather, such limitations are based on the amount of fish or shellfish that

may be taken by the permit holder - the vessel being a wholly fungible item.

32.   The seventeen harvesting companies in the Fishery hold equal IFQ allocations of surf clams. These are: Aqua Harvesters; Bay Head; C. Seaman Seafood; Doxsee Sea Clam; Edgar Seafood; Fernandez & Family; Freeport Sea Clam; Lady Kim; Lyons Fisheries; Ocean Fresh Seafood, Inc.; Off Shore Diving; PEK Clam; Shellfish, Inc.; SMJ Products; St. Peter Dock; Verbeke; and Winter Harbor Brands (the "harvesting companies").

33.   Each year the Department re-issues harvesting Permits to the harvesting companies in *pro forma* fashion. Absent non-compliance with the regulations in a manner that would warrant the administrative loss of a Permit, all harvesting companies holding a Permit in the present year are entitled to its renewal for the following year upon the submission of an annual application for which no fee is required.

34.   Significantly, the right to continue to use a commercial fishing permit is considered a protectable property "interest" under federal law. Moreover, the Department has acknowledged in both its 2003 Fishery Management Plan ("FMP") for the Atlantic Ocean Surf Clam Fishery, and in its 2009 Amendment 1 to the Fishery Management Plan ("FMP Amendment 1") that it considers commercial surf clamming to be "a fundamental right". (*Exhibit "B", FMP* at 10, § 2.4.; *Exhibit "C", FMP Amendment 1,* at 20, § 2.4)

35.   Indeed, the Department has acknowledged that the rights of companies "who lawfully entered the surfclam fishery in 1989 and thereafter must be protected consistent with constitutional requirements" (*id.*), and that "any regulations restricting a person from exercising such right must be narrowly tailored to serve a compelling governmental interest." *Id.* Accordingly, each company's ability to use its Surf Clam Permit is a fundamental right

10

protectable under the U.S. Constitution.

**B.      The Replacement Rule - (6 N.Y.C.R.R., § 43-3.5).**

36.     As part of its original limited entry regulations the Department and the harvesting companies

recognized that circumstances would arise where a company's identified fishing vessel might

not be available - *e.g.,* maintenance issues, safety issues, inadequate size of vessel, or vessel

loss - and provided a method of allowing a Permit to be amended to reflect the use of a

different vessel than when the Permit was issued.

37.     Codified in 1993 at section 34-3.5(a) of the "limited entry" regulations (6 N.Y.C.R.R., Part

43-3), the Replacement Rule allowed any harvesting company in the Fishery to replace the

vessel identified on its Permit "at any time for any reason." *Id.*

38.     The Replacement Rule has, since its adoption, been routinely used by harvesting companies

to "replace" damaged, lost, or incompetent vessels with other vessels, initially without regard

to the state of residency of the vessel's owner, and served as the only way that many

companies could economically harvest their Permits. But for the adoption and enforcement

of the Single Permit Rule, the existing vessels in the Fishery would be available to the

Harvesting Companies for use.

**C.      The "Residency Rule".**

39.     All harvesting companies in the Surf Clam Fishery are New York corporations or entities and

each holds a "resident" Surf Clam Permit. By Departmental regulation, the use of vessels

by holders of "resident" Surf Clam Permits is limited to only those vessels owned by New

York resident companies under what is called the "Residency Rule." 6 N.Y.C.R.R. § 43-

2.4(d). By its terms, the Residency Rule prohibits out-of-state vessels from being used in the

11

Fishery by the harvesting companies.

**D.      The "Seventy-Foot Rule".**

40.     A further restriction on the use of vessels also affects the Fishery.  In 1997 the New York
State Legislature adopted as part of a compendium of amendments to the Environmental
Conservation Law an amendment to section 13-0349 that by its terms limits to a maximum
length of 70 feet all fishing vessels to be used in New York's waters, and grandfathered all
vessels in the Fishery prior to July 1, 1997, regardless of their length. (*See,* Laws of 1997,
ch. 263)  This is the genesis of the "Seventy-Foot Rule."  The Seventy-Foot Rule replaced
a prior law restricting fishing vessels to 90 feet in length that had been declared
unconstitutional by this Court in 1989. [2]

41.     In 2010 the Seventy-Foot Rule was amended to number the seventy-foot limitation as
subdivision (1); to number the grandfathering provision as subdivision (2); and to include
a new provision for a one-time length increase for fishing vessels being used in New York's
waters as new subdivision (3). (Laws of 2010, ch. 485).  The Seventy-Foot Rule restricts the
entry of all vessels that are "new" to New York's waters if they exceed 70 feet in length,
unless they are used to replace an existing fishing vessel, and then, they are limited to a 10%
increase in length over the vessel that they are to replace.

42.     All fishing vessels used in the Surf Clam Fishery are less than 84.5 feet in length and, where
they exceed 70 feet, are grandfathered under the provisions of the Seventy-Foot Rule.
Nonetheless, the vast majority of other surf  clam vessels owned by out-of-state entities,
including plaintiff LET Vessels, although otherwise available for use in the Fishery exceed

---

2.     *American Prince, Ltd. v. Jorling,* 710 F.Supp. 893 (E.D.N.Y. 1989).

seventy-feet in length and are precluded from use by the Seventy-Foot Rule.

**E.     The Individual Fishing Quota ("IFQ") Allocation.**

43.     Significant to the issues to be determined in this action is the concept of the "Individual Fishing Quota" allocation ("IFQ allocation"), which is the "total allowable catch" (TAC) (herein "annual quota") of surf clams that may be taken from the Fishery in any year as annually determined by the Department, divided by the number of harvesting companies in the Fishery (17). [3]

44.     As originally conceived by FMP Amendment 1, the annual quota was distributed as between the same seventeen companies who now hold Permits, but was based on a division of 22 equal shares owing to the fact that three harvesting companies prior to 1993 had been harvesting with more than one vessel. The initial division of the annual quota by the number of vessels then being used (22) was an acknowledgment that those three harvesting companies had a higher investment in the Fishery and that it would have been inequitable to divide the annual quota in any other way.   Each IFQ allocation was identified to the harvesting company's Permit by identification of a different vessel to harvest that allocation.

45.     Prior to 2011 those harvesting companies who did not own vessels capable of safely or economically harvesting their IFQ allocations routinely used the Replacement Rule to harvest their allocations by entering into a charter/lease of a vessel from another company in order to harvest in the Fishery.  Indeed, many harvesting companies, although owning a vessel to which their permit was identified, could not use that vessel due to its state of repair, and due

---

3.     This division of the annual quota is presently being challenged in the New York State Supreme Court. (*Bay Head, Inc. v. N.Y.S.D.E.C.,* Index No.  22045/2013 (Sup. Ct., Suffolk Co.)) It is not an issue in this action.

to safety concerns as a result of the length of the vessel.  Moreover, each Permit could be harvested in 3 to 4 weeks, causing companies to hold vessels unused at the dock for the remainder of the year.

46.     Commencing in 2011, and extending through 2013, the harvesting companies were authorized by state legislation to harvest their IFQ allocations by using other companies' vessels under the "Cooperative Harvesting Law." (E.C.L. § 13-0309(15); New York Laws of 2011, ch. 158).

47.     The legislative history of the Cooperative Harvesting Law makes clear that its purpose, along with that of a component of the same legislation (the "Consolidation Law" - § 13-0309(16)), was to reduce the number of vessels in the Fishery due to health and safety, economic and environmental reasons, and to allow all of the harvesting companies to harvest their IFQ allocations from the fewer remaining vessels.  After adoption of the laws, consolidations occurred reducing the number of vessels and the remaining vessels in the Fishery were cooperatively used or leased by the harvesting companies.  The cooperative harvesting practice was ended beginning in 2014 when the Cooperative Harvesting Law was allowed to sunset due to the Department's lack of support.

48.     Through the period from the demise of the Cooperative Harvesting Law in 2013, and until the Single Permit Rule was adopted in July 2016, the non-vessel owning Harvesting Companies chartered the available surf clam vessels from within the State, and were able to harvest their IFQ allocations by using the Replacement Rule.   Similarly, during this 2014-2016 period, the vessel owning Harvesting Companies leased their vessels for use as replacements without limitation.

III.   **The New York Surf Clam Fishery Participants:**

49.   The participants in the Fishery are divided into three categories: the harvesting companies, the vessel-owning companies, and the surf clam shipper/processor/distributor companies. All of the plaintiffs derive their living or a substantial portion of their income from harvesting surf clams from the Atlantic Ocean, by then selling and/or shipping those surf clams to wholesaler/processor/distribution companies either for human consumption or for use as raw bait or chum in the commercial fishery industry in New York and other states.

A.   **The Surf Clam Harvesting Companies.**

50.   Of the seventeen harvesting companies in the Surf Clam Fishery, fifteen are plaintiffs in this action. The harvesting companies are commercial fishing corporations who have been granted licenses by the State of New York to harvest surf clams from the territorial waters of the State of New York and have done so since 1993 at least.

51.   The harvesting companies are further divided into two classes: (1) those who do not own vessels capable of harvesting surf clams and, heretofore, have leased vessels for use in the Fishery (the "non-vessel-owning harvesting companies") and; (2) those companies that own the vessels that are used in harvesting IFQ allocations (the "vessel-owning harvesting companies").

B.   **The Non-Vessel-Owning Harvesting Companies.**

52.   Twelve (12) harvesting companies [4] who do not own vessels capable of economically harvesting their IFQ allocations and who, heretofore, have chartered the vessels from the

---

4.   These are: Aqua Harvesters; C. Seaman Seafood; Doxsee Sea Clam; Edgar Seafood; Fernandez & Family; Freeport Sea Clam Co.; Lady Kim; Lyons Fisheries; Off Shore Diving; PEK Clam Co.; SMJ Products; and Verbeke.

vessel-owning companies. They are referred to herein as the "non-vessel-owning harvesting companies."

53.    Eight of the twelve non-vessel-owning harvesting companies (Aqua Harvesters; C. Seaman Seafood; Doxsee Sea Clam; Freeport Sea Clam; Lady Kim; Lyons Fisheries; Off Shore Diving; PEK Clam; SMJ Products; and Verbeke) harvested from the Surf Clam Fishery during the 2014 and 2015 fishing seasons with vessels leased to them by other companies.

**C.    The Vessel-Owning Companies.**

54.    Of those companies who have provided vessels, or who have attempted to provide their vessels, for use as replacement vessels for use in the Surf Clam Fishery, these are divided as between harvesting companies who hold Surf Clam Permits and companies who do not hold Surf Clam Permits.

**(1)    The New York Vessel-Owning Harvesting Companies** -

55.    In 2016 only five harvesting companies owned fishing vessels that were capable of being used economically and safely to harvest IFQ allocations from the Fishery. These vessels were also leased to other companies during the 2013 through the 2016 fishing years.

56.    Of these, three vessels are owned by Harvesting Companies in this action and are identified as follows:

| Harvesting Company | Fishing Vessel | U.S.C.G. Official # |
|---|---|---|
| Bay Head, Inc. | *F/V Amanda Tara* | 545441 |
| St. Peter Dock, Inc. | *F/V Mary T* | 916876 |
| Winter Harbor Brands, Inc. | *F/V Ocean Girl* | 529673 |

57.    Each of the above listed vessels is a "documented vessel" pursuant to the provisions of 46

U.S.C., §§ 106, and each holds a "fishery" endorsement pursuant to 46 U.S.C., § 12113, as administered by the United States Coast Guard. (*Exhibit "D", hereto*)

58. On information and belief, two vessel-owning harvesting companies (Ocean Fresh Seafood, Inc., and Shellfish, Inc. - who are not plaintiffs in this action) actively harvest surf clams in from the Surf Clam Fishery for sale to the commercial fishery bait industry from vessels they own:

| Harvesting Company | Fishing Vessel | U.S.C.G. Official # |
|---|---|---|
| Ocean Fresh Seafood, Inc. | *F/V Heaven Sent* | 545441 |
| Shellfish, Inc. | *F/V Susan H* | 980886 |

59. On information and belief, each of the above listed vessels is a "documented vessel" pursuant to the provisions of 46 U.S.C., § 106, and each holds a "fishery" endorsement pursuant to 46 U.S.C., § 12113, as administered by the United States Coast Guard.

60. On information and belief, in 2016 both Ocean Fresh and Shellfish harvested a portion of, or the entirety of, their IFQ allocations for bait purposes.

**(2)     The New York Non-Harvesting, Vessel-Owning, Companies -**

61. There are three non-harvesting, vessel-owning, companies from New York who have over the past three fishing seasons lease/chartered their vessels to harvesting companies in the Surf Clam Fishery.

62. Two of these companies, and their vessels, are:

| Vessel Owner | Fishing Vessel | U.S.C.G. Official # |
|---|---|---|
| Freeport Fish Dock, LLC | *F/V Asherah* | 1153176 |
| TMT Vessels (NY), LLC | *F/V Roberta Lee* | 689195 |

63.     The *F/V Roberta Lee* is a "documented vessel" pursuant to the provisions of 46 U.S.C., §§ 106 and holds a fishery endorsement under section 12113 of the Shipping Act. (*Exhibit "D"*, *hereto*).

64.     On information and belief, the *F/V Asherah* is a "documented vessel" pursuant to the provisions of 46 U.S.C., §§ 106, and holds a "fishery" endorsement under section 12113 of the Shipping Act.

65.     In 2016, a third New York company - American Pride Seafood, LLC - lease/chartered its fishing vessel - *F/V Allegiance* - to one of the harvesting companies (Verbeke). The *F/V Allegiance* is not a federally documented or fishery endorsed. Rather, it is "registered" under New York law.

### (3)     The Non-New York Vessel-Owning Company -

66.     A third category of vessel-owning company has been denied the right to lease its vessels for use in the Fishery by laws challenged in this action. In 2016, Plaintiff LET Vessels ("LET Vessels"), a New Jersey Limited Liability Company, contracted with several of the harvesting companies to lease/charter surf clam vessels it owns for use in the Fishery, and those harvesting companies sought to replace their identified vessels with surf clam boats leased from LET Vessels.

67.     The vessels that LET Vessels contracted to lease to the harvesting companies are as follows:

| Lessee Harvester Co. | Fishing Vessel | USCG Official # |
|---|---|---|
| Bay Head, Inc. | *F/V William Lee* | 901666 |
| Freeport Sea Clam Co., Inc. | *F/V Jersey Girl* | 907380 |
| Lyons Fisheries, Inc. | *F/V Catherine Elizabeth* | 1135569 |
| Off Shore Diving Corp. | *F/V Lady Brittany* | 1123286 |

PEK Clam Co., Inc.                    *F/V Timberline I*                    622203

68.    Each of these vessel is a "documented vessel" pursuant to the provisions of 46 U.S.C., §§

106, and holds a fishery under section 12113 of the Shipping Act. (*Exhibit "E", hereto*).

**D.    The Surf Clam Shipping/Processing/Distribution Companies.**

69.    Two of the plaintiffs herein  (Galilean Seafoods; Oceanside Packers) either ship or receive

surf clams directly from harvesting companies after the harvesting companies land their surf

clams in New York.  The surf clams are shipped in interstate commerce to other downstream

recipients who process surf clam meats into food products and for distribution and sale

(Atlantic Capes Fisheries; Galilean Seafoods; Seawatch International), also in interstate

commerce.

**(1)    Galilean Seafoods, LLC, and Atlantic Capes Fisheries, Inc. -**

70.    Plaintiff Galilean Seafoods, LLC, receives surf clams harvested from the Fishery and landed

in New York from both the Edgar Seafood and Fernandez & Family companies, and then

ships them by truck to Galilean Seafoods' processing facility in Bristol, Rhode Island.

71.    Galilean Seafoods sells the shellstock to its corporate parent, Atlantic Capes Fisheries, Inc.,

and then processes the surf clam meats into products which Atlantic Capes then distributes

in interstate commerce. (*See, Affidavit of Maxi Cohen,* ¶ 3; *Affidavit of C. Shriver,* ¶¶ 2, 4-5)[5]

---

5.    Provided herewith as a separate submission are the Affidavits of executives of the various
companies in support of the Complaint and in support the application for injunctive relief, to which
this Complaint refers.  These are the affidavits of Maxi Cohen, (Edgar Seafood, Fernandez &
Family); Jack Collins, (SMJ Products); Charles Corriss, (American Pride); Brooks Dermont, (Aqua
Harvesters, Bay Head, C. Seaman Seafood, Doxsee Sea Clam, Freeport Sea Clam, Lady Kim, Lyons
Fisheries, Oceanside Packers, Off Shore Diving, PEK Clam, St. Peter Dock, TMT Vessels (NY),
Winter Harbor); James Meyers, (LET Vessels, Sea Watch International); Chris Shriver (Galilean
Seafoods, Atlantic Capes) and John Verbeke (Verbeke, Inc.).

### (2)     Oceanside Packers, Inc. -

72.     Plaintiff Oceanside Packers, Inc. receives surf clams from various of the Harvesting Companies (Aqua Harvesters, Bay Head, C. Seaman Seafood, Doxsee Sea Clam, Freeport Sea Clam, Lady Kim, Lyons Fisheries, Offshore Diving, PEK Clam, St. Peter Dock, Winter Harbor Brands) at its Oceanside, New York, docking facility and packs, sells and ships surf clams to plaintiff Seawatch International's processing facilities in Milford, Delaware and New Bedford, Massachusetts.

73.     Oceanside Packers holds various Department-issued authorizations including a Shellfish Dealer permit, a shellfish "Shipper A" permit authorizing it to undertake shipping operations, and an "Interstate Shellfish Shipping Authorization". (*Exhibit "F"*; *see also, Affidavit of James Meyers,* ¶ 15)

### (3)     Seawatch International, Ltd. -

74.     Seawatch International, Ltd., is a surf clam processing company who purchases surf clams nationally and purchased surf clams caught by various of the Harvesting Companies in 2016 and in previous years (Aqua Harvesters, Bay Head, C. Seaman Seafood, Doxsee Sea Clam, Freeport Sea Clam, Lady Kim, Lyons Fisheries, Offshore Diving, PEK Clam, St. Peter Dock, Winter Harbor Brands).

75.     Seawatch has also purchased surf clams harvested by other Harvesting Companies in previous years (Shellfish, Inc. (2013); SMJ Products Corp. (2013, 2014), Verbeke (2013, 2014)), which were then shipped by Oceanside Packers.

76.     The processed surf clam products created by Seawatch International are sold throughout the United States and world-wide. (*Affid. of James Meyers,* ¶¶ 18-19)

77.    As a result of several of the Harvesting Companies' inability to harvest their 2016 IFQ allocations (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam), SeaWatch International is significantly impacted by a loss of revenue due to the working of the Single Permit Rule and other laws challenged herein. (*Affid. of J. Meyers,* ¶¶ 17, 18, 22-25, 34; *Affid. of B. Dermont,* ¶¶ 46-60)

            **(4)    Other Processors -**

78.    Finally, on information and belief in 2016 another local processing company, M & M Fisheries, Inc., [6] also received surf clams harvested from the Fishery from three of the Harvesting Company Verbeke, Inc. (Verbeke's IFQ allocation being harvested from the *F/V Allegiance* owned by plaintiff American Pride); from Freeport Fish Dock, Inc. (who used its vessel - *F/V Asherah* - to harvest Harvesting Company plaintiff SMJ Products' IFQ allocation); and from harvesting company Ocean Fresh Seafood, Inc.,using its vessel the *F/V Heaven Sent* to take its IFQ allocation.

**III.    The "Single Permit Rule" is Proposed and Adopted:**

79.    In 2016, only five of the seventeen harvesting companies owned vessels capable of being used in the Fishery.  Three other companies who did not hold Surf Clam Permits (TMT Vessels; American Pride; Freeport Fish Dock, Inc.) lease-chartered their vessels to non-vessel owning harvesting companies during the 2014-2016 period.

80.    As a result of the Single Permit Rule, a total of 8 vessels were available in 2016 for use in New York to harvest within the Fishery - less than half of the vessels needed to harvest the issued Permits.

_____

6.    M & M Fisheries, Inc. is not a party to this action.

81. In 2016, the Harvesting Companies Aqua Harvesters, Bay Head, C. Seaman Seafood, Doxsee Sea Clam, Freeport Sea Clam, Lady Kim, Lyons Fisheries, Off Shore Diving, PEK Clam Co., St. Peter Dock, and Winter Harbor Brands all intended to use their vessels or vessels leased from the vessel-owning companies include in this group to harvest their 2016 IFQ allocations for the food industry in interstate commerce.

82. In 2016, SMJ Products chartered a fishing vessel from Freeport Fish Dock, Inc. (the *F/V Asherah*), and Verbeke chartered a vessel from American Pride Seafood (the *F/V Allegiance*), each  in order to harvest their IFQ allocations for bait purposes.

83. In 2016, two Harvesting Companies - Edgar Seafood and Fernandez & Family - contracted with Shellfish, Inc. to lease the *F/V Susan H* to harvest their IFQ allocations for use as food.

84. On information and belief, the two remaining non-plaintiff harvesting companies Ocean Fresh Seafood, Inc. and Shellfish, Inc. intended to and did harvest their 2016 IFQ allocations from vessels they owned.

85. Thus, in 2016 all of the non-vessel owning harvesting companies contracted to use fishing vessels from the vessel-owing companies, and intended to harvest surf clams from the Surf Clam Fishery for sale to the food industry or in the bait industry, both in interstate commerce.

86. None of the non-vessel owning harvesting companies can economically build or re-fit surf clam vessels for their use because the cost of fitting out a vessel for use, as well as in insuring, maintaining, crewing, and operating the vessel, generates insufficient revenue to justify the investment.

87. On July 27, 2016, the Department publicly noticed the adoption of the Single Permit Rule - amending and adding new sections 43-2.6(b), 43-2.8(e), and 43-3.5(e) - to limit the use of

any fishing vessel to the harvest of only one IFQ equivalent in any year. (*Exhibit "A"*) The Single Permit Rule effectively eliminated the ability of a harvesting companies to use the Replacement Rule to lease/charter a fishing vessel that has already harvested one IFQ or its equivalent, essentially requiring that each harvesting company must either own or lease a different vessel to harvest its IFQ allocation.

## V.   **The Impacts of the Single Permit Rule:**

### A.   **Impacts to the Harvesting Plaintiffs.**

88.   On information and belief, only ten of the seventeen harvesting companies harvested their 2016 IFQ allocations (Aqua Harvesters; C. Seaman Seafood; Doxsee Sea Clam; Lady Kim; Ocean Fresh Seafood, Inc.; Shellfish, Inc.; SMJ Products; St. Peter Dock; Verbeke; Winter Harbor Brands).

89.   In late July, 2016, after the Single Permit Rule became effective, one harvesting company (Edgar Seafood) was stopped by the Department from harvesting its 2016 IFQ allocation because the vessel it was using (*F/V Susan H*) had already harvested an IFQ allocation for its owner's company (Shellfish, Inc.) earlier this year. (*See, Affid. of M. Cohen,* ¶¶ 5-6; *Affid. of C. Shriver,* ¶¶ 4-5)

90.   As well, in 2016, five non-vessel-owning Harvesting Companies were precluded from harvesting their IFQ allocations due to a lack of eligible vessels created by the Single Permit Rule: (Fernandez & Family; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam).

91.   Also in 2016, an sixth Harvesting Company (Bay Head) was prohibited from using *its own vessel* (*F/V Amanda Tara*) by the Single Permit Rule because the *Amanda Tara* had already

23

been used to harvest other Harvesting Companies' IFQ allocations.

92.   By its enforcement of the Single Permit Rule in late July 2016 the Department stopped Harvesting Company Edgar Seafood from using a vessel that it had replaced onto its permit (*F/V Susan H*) because that vessel had already harvested one IFQ allocation that year. The remainder of Edgar Seafood's 2016 IFQ allocation went unharvested for lack of a vessel to do so.

93.   As well, Harvesting Company Fernandez & Family was prohibited from using the *Susan H* in 2016 for the same reason and lost the ability to harvest its 2016 IFQ allocation.

94.   Neither Edgar Seafood nor Fernandez & Family will be able to lease the *Susan H* this year as a result of the Single Permit Rule. (*See, Affidavit of Maxi Cohen*, ¶ 6-10)

B.   **Impacts to the Vessel-Owning Plaintiffs.**

95.   Accordingly, the defendants' actions have and will continue to cause significant economic damage to the vessel-owning company plaintiffs (the "Vessel Owning Companies") by the diminishment of their right to charter their vessels to the Harvesting Companies, and the Vessel-Owning Companies have standing to sue and complain thereof.

96.   All non-vessel-owning harvesting companies have standing to sue and complain of the defendants' actions as the effect of the Single Permit Rule and other statutes and regulations at issue here will cause economic damage to them by barring their right to use fishing vessels presently in the Surf Clam Fishery to harvest the surf clam IFQ allocations granted under their Surf Clam Permits, and which are to be granted to them in future years, which will cause a total inability to generate revenue from their Surf Clam Permits.

97.   Similarly, the vessel-owning plaintiffs have standing to sue and complain of the action by

the defendants as the defendants' actions have and will continue to cause significant economic damage to them by the diminishment of their right to charter vessels to the Harvesting Companies.

**C.**    **Impacts to the Shipping Plaintiffs.**

98.    Due to the inability of Edgar Seafoods and Fernandez & Family obtain vessels to harvest with, Galilean Seafoods, LLC was deprived of a substantial portion of surf clam shellstock used in its business in 2016 as a result of the enforcement of the Single Permit Rule. *(Affid. of M. Cohen, ¶¶ 9-12; Affid. of C. Shriver, ¶¶ 7-10)*

99.    As a result of the Single Permit Rule, several of the Harvesting Companies were unable to harvest their 2016 IFQ allocations (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam). Accordingly, Oceanside Packers was significantly impacted by a loss of revenue in 2016 due to the working of the Single Permit Rule and other laws challenged herein. *(Affid. of J. Meyers, ¶¶ 16-17; see also, Affidavit of Brooks Dermont, ¶¶ 46-60)*

**D.**    **Impacts to the Processing/Distribution Plaintiffs.**

100.    As are attested to in the Affidavits of James Meyers, Chris Shriver, and Maxi Cohen, the processor/distribution companies have standing to bring this action in light of the impacts to their businesses due to the loss of surf clam shellstock, surf clam meats, and resultant value-added products that has been felt and will continue to be felt, as a result of the continued unlawful regulation of interstate commerce seen by the adoption and enforcement of the Single Permit Rule and the enforcement of the other New York laws challenged hereby.

101.   The Single Permit Rule threatens the continued survival of the industry's harvesting, shipping, and processing participants (the "industry") by unlawfully limiting the use of fishing vessels in the Fishery to the harvest of one IFQ or its equivalent, all where no other vessels are available either in New York or are available for use from non-New York companies under present regulations.

**VI.    The Impacts of the Residency Rule and the Seventy-Foot Rule:**

102.   In 2016 five of the Harvesting Companies (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam) who were unable to find usable vessels in the State of New York from which to harvest their IFQ allocations by the advent of the Single Permit Rule, contracted to lease vessels owned by plaintiff LET Vessels - a New Jersey limited liability company - for use in the Fishery.

103.   On October 27, 2016 these five Harvesting Companies submitted to the Department "Notices of Replacement" of the vessels identified to their Surf Clam Permits with the leased non-resident vessels ("out-of-state" vessels).

104.   On November 23, 2016 the Department denied four of these companies [7] the right to replace their vessels under the Replacement Rule with out-of-state vessels, stating that the vessels in question "do[] not qualify as an 'eligible' replacement vessel . . . for use in the Atlantic Ocean surfclam fishery" because:

>        As stated above, any vessel to be considered for replacement of an eligible vessel in the Atlantic Ocean surfclam fishery must be owned by a resident of the State of New York as Required by 6 NYCRR Subpart 43-2.4 and meet the vessel length restrictions of ECL § 13-0349.

---

7.     The fifth of these companies (Lyons Fisheries) was not granted a replacement based on the grounds of an "incomplete application" but, clearly, would have been denied for identical reasons.

(*Exhibit "G"*, at pages 2, 4, 6 & 8) (the Denial Letters"))

105.   The Denial Letters identified both the Residency Rule and the Seventy-Foot Rule as separate grounds to deny these Harvesting Companies the right to lease vessels from LET Vessels for use in the Fishery.  By application of the challenged laws the Department denied these Harvesting Companies the ability to use any vessel to harvest their IFQ allocations, and denied LET Vessels the right and ability to lease any of its vessels to the Harvesting Companies for use in the Fishery.

106.   For reasons addressed herein, the Seventy-Foot Rule and the Residency Rule are unlawful protectionist enactments intended to deny out-of-state vessels and entities the right to harvest and/or operate in the New York Surf Clam Fishery.

107.   The right to use a fishing vessel of the United States in any state's waters is protected under federal law by the Shipping Act.  Moreover, as tangible property, the ability to use a fishing vessel in the fisheries of any state is protected under Constitutional precepts.  Accordingly, plaintiff LET Vessels possesses a protectable property interest in the use of its vessels under the United States Constitution which has been violated by the Department's regulations and the New York State laws challenged herein.

108.   The rights granted to vessels under the Shipping Act to be used in the fisheries of any state of the United States apply not only to the rights of the Vessel Owning Companies to lease their vessels for such use, but equally to protect the Harvesting Companies' rights to obtain such vessels for use regardless of the State in which the vessels' owners reside or are venued.

109.   The prohibition on use of a fishery endorsed vessel - whether as a matter of a limitation on the number of times the vessel may be used, or by reference to whether a vessel is a "non-

27

resident"or out-of-state vessel, violates the Shipping Act.

110. Thus, non-resident vessel-owning company Plaintiff LET Vessels has standing to sue and complain of the action by the defendants as the Residency Rule and the Seventy-Foot Rule has caused it economic damage in 2016 and will continue to cause economic damage by denying it the right to lease vessels owned by it to New York harvesting companies for use in the Surf Clam Fishery, which is a denial of a right granted to it under federal law and the United States Constitution.

111. Similarly, the Harvesting Companies have standing to sue and complain of the action by the defendants as the Residency Rule and the Seventy-Foot Rule have caused them economic damage in 2016, and will continue to cause them economic damage in the future, by denying them the right to lease vessels owned by out-of-state entities, or by denying them the right to lease vessels in excess of seventy-feet in length, for use in the Surf Clam Fishery, which is a denial of a rights granted to them under federal law and the United States Constitution.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (U.S. Constitution, Art. VI, cl. 2 - Supremacy Clause - the "Single Permit Rule")

112. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "112" as if fully set forth herein at length.

113. The second clause of Article VI of the United States Constitution states, in relevant part:

> This Constitution, and the Laws of the United States which shall be made in pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

(*Id.*)

28

**A.**   **Plaintiffs' Vessels are Documented and "fishery" Endorsed
Under the Shipping Act- 46 U.S.C., §§ 106 & 12113 *et seq.***

114.   Each of the vessels owned by plaintiffs Bay Head; St. Peter Dock; TMT Vessels; and Winter

Harbor Brands, are federally documented under the Shipping Act (46 U.S.C., § 106), and

each holds a "fishery" endorsement thereunder. (46 U.S.C., §§ 12113) (*Exhibit "D", hereto*)

Each is, therefore, a "vessel of the United States" (46 U.S.C., § 116) and a "fishing vessel"

as defined under the Shipping Act. (46 U.S.C., § 2101(11a)).

115.   Under the Shipping Act, the term "fisheries" is defined as follows:

the term "fisheries" includes processing, storing, transporting (except in
foreign commerce) . . . catching, taking, or harvesting fish, shellfish . . . in the
navigable waters of the United States or in the exclusive economic zone.

(*Id.,* § 108 (underline added))

**B.**   **The Department Adopts the Single Permit Rule.**

116.   On December 16, 2015, the Department noticed a proposed rulemaking in the New York

Register, seeking public comment on proposed amendments to "subparts 43-2 and 43-3 of

volume 6 of the N.Y.C.R.R., the Department's regulations affecting the Atlantic Ocean Surf

Clam fishery. The proposed amendments were ultimately adopted on July 27, 2016 and

effectively eliminated the use of the Replacement Rule by harvesting companies for purposes

chartering a vessel to harvest a company's IFQ allocation where that vessel had already

harvested one IFQ or equivalent that year. (*Exhibit "A", hereto*)

117.   The adopted rulemaking amended subdivision 43-2.6(b) of the Department's Atlantic Ocean

Surf Clam Fishery regulations to read as follows:

No eligible vessel shall take or attempt to take more than one quota allocation
of surfclams on any surfclam/ocean quahog Atlantic Ocean permit or take more than
the cumulative equivalent of one quota allocation if identified as the eligible vessel

on one or more surfclam/ocean quahog Atlantic Ocean permits when authorized pursuant to section 43-3.5 of Subpart 43-3, during any calendar year.

(*Id.*)

118.    Another amendment, to subdivision 43-2.8(e) of the regulations, was adopted to read:

No vessel shall take or attempt to take more than one quota allocation of surfclams on any surfclam/ocean quahog Atlantic Ocean permit or take more than the cumulative equivalent of one quota allocation if identified as the eligible vessel on one or more surfclam/ocean quahog Atlantic Ocean permits when authorized pursuant to section 43-3.5 of Subpart 43-3, during any calendar year.

(*Id.*)

119.    Finally, the adopted rulemaking added a new subdivision to Sub-Part 43-3.5(d) of the

regulations that read:

No vessel in the Atlantic ocean surfclam fishery which has been subject to and identified in the sale, transfer or replacement of an eligible vessel by the vessel owner or lessee under this section shall take more than one individual fishing quota (IFQ) or take more than the cumulative equivalent of one IFQ in any calendar year when identified on one or more Atlantic Ocean surfclam owner/lessee permits.

(*Id.*)

120.    On July 27, 2016 the Single Permit Rule was adopted and became effective by its publication

in the *New York Register*.  A violation of the Single Permit Rule  carries with it the possible

imposition of a fine of not less than $100.00 per surf clam in excess of 25 taken (E.C.L., §

71-0921(8)(c)), and the potential of treatment as an "E Felony" in the event that the

commercial value of the surf clams taken exceeds $1,500.00. (E.C.L., § 71-0924(3))  A daily

authorized harvest of surf clams (28 cages/896 bushels) far exceeds this amount.  Thus, use

of a vessel that has already harvested one IFQ allocation to take one day's normal harvest

would be an E-felony.

121.    Additional "civil penalties" for a violation of the Single Permit Rule can also be assessed

30

(E.C.L., § 71-0925(7)), and the potential forfeiture of the fishing vessel used could arise. (E.C.L., §§ 71-0909(4); 13-0309(3)(c) & 13-0309(12)) Thus, potential and extreme criminal penalties and forfeitures exist both for the harvesting company and the vessel-owning company for violation of the Single Permit Rule.

122.   These penalties have a chilling effect on any harvesting company in the Fishery using a vessel that has already harvested an IFQ allocation in any harvest year, and an equally chilling effect on any vessel-owning company who might lease its vessel for use in the Fishery where that vessel has already harvested one IFQ allocation in that harvest year.

123.   The prohibitions of the Single Permit Rule fall on all vessel-owning companies as they not only limit the use of any particular vessel - thereby reducing its value in any particular year - but also because deny those vessels the rights afforded under the Shipping Act.

124.   The prohibitions of the Single Permit Rule also fall particularly hard on the non-vessel-owning Harvesting Companies as there are an insufficient number of usable surf clamming vessels in New York to allow for the harvesting of each issued Permit by a separate vessel.

125.   The non-vessel-owning Harvesting Companies will not be able to obtain vessels to harvest their IFQ allocations as all vessels owned by other harvesting companies will be used by those companies to take their IFQ allocations and, therefore, will be unavailable as a result of the Single Permit Rule.

**C.   The Department has Enforced the Single Permit Rule.**

126.   As attested to in the affidavit of Maxi Cohen, after adoption of the Single Permit Rule the Department forced plaintiff Edgar Seafood to cease using the *F/V Susan H* to harvest surf clams from the Fishery because the *Susan H* had already harvested an IFQ allocation for

Shellfish, Inc.

127. In 2016, other Harvesting Companies (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam) were chilled by the penalties that would occur from violation the Single Permit Rule and abandoned their intent to use in-state vessels that they had leased, but which had previously harvested one IFQ equivalent, and leased out-of-state vessels to replace the vessels then-identified to their permits.

128. These Harvesting Companies leased vessels from plaintiff LET Vessels because no other vessels were available in New York that had not been already used to harvest one IFQ allocation (*Affid. of J. Meyers,* ¶¶ 12-13), but were denied the right to "replace" the out-of-state vessels on their permits and could not harvest their 2016 IFQ allocations. (*Declaration of J. L. Snead,* at ¶¶ 96-100)

129. These same impacts will be felt in 2017 and in subsequent years should the Single Permit Rule remain in place.

**D.     The Single Permit Rule is Pre-empted Under Federal Law.**

130. The free and unrestricted use of "fishery vessels" as "vessels of the United States" within the several states constituting the United States for purposes of use in the commercial "fisheries" and the navigable waters of the United States is guaranteed by the Shipping Act. 46 U.S.C., § 101 *et seq.*

131. Vessels that are fishery endorsed under the Shipping Act may be used anywhere in the United States for the purpose of commercial fishing or shellfishing, absent a legitimate and compelling local interest that warrants their preclusion from a particular fishery.

132. The "fishery" endorsement provisions of the Shipping Act (46 U.S.C., § 12113 ) are intended

to be paramount to any contrary state laws or regulations, and pre-empt the application or enforcement of contrary state laws or regulations.

133.    Any state statute, or state administrative agency regulation or management plan, that contravenes the authority granted or otherwise abridges the right to use federally documented and endorsed vessel within the territorial jurisdiction of a state of the United States is pre-empted under the Shipping Act.

134.    As a law of the United States the Shipping Act is paramount to any contrary law or regulation of any state of the United States and, therefore, any state law or regulation that limits or prohibits the use of a documented and fishery endorsed vessel within any state violates the Supremacy Clause of the United States Constitution.

135.    By the adoption of the Single Permit Rule (6 N.Y.C.R.R. §§ 43-2.6(b), 43-2.8(e), 43-3.5(d)), the defendants have facially violated the Supremacy Clause of the Constitution by directly restricting the rights of fishery endorsed vessels to be used in New York waters for the purposes for which they were documented and endorsed for use under the laws of the United States.

136.    The Single Permit Rule serves no legitimate or compelling local governmental, environmental, health, safety, police, or welfare function.

137.    The Vessel Owning Companies have been damaged in their businesses by the denial of their constitutional and statutory rights by defendants' actions, and that harm is both irreparable and will continue to occur absent equitable relief from this Court.

138.    Justiciable causes of action are pleaded by the Vessel Owning Company plaintiffs such that the Court should declare the rights and relationships of the parties.

139. The violations of the plaintiffs' rights as secured under the Shipping Act are occurring and will continue in the absence of injunctive relief.

140. Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the Court is warranted in declaring that the Single Permit Rule is pre-empted by the authority granted to fishing vessels that are documented and "fishery" endorsed under the Shipping Act. (46 U.S.C., §§ 106, 12113), and may enjoin the application or enforcement of the Single Permit Rule.

### AS AND FOR THE SECOND CAUSE OF ACTION
**(U.S. Constitution, Art. VI, cl. 2 - Supremacy Clause - the "Residency Rule")**

141. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "140" as if fully set forth herein at length.

142. Plaintiff, LET Vessels, owns vessels that are configured and capable of being used to harvest surf clams and are fishery endorsed under the Shipping Act. (*Exhibit "E", hereto*)

143. The vessels owned by LET Vessels and leased in 2016 by Harvesting Companies Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; and PEK Clam, are "vessel[s] of the United States" and are "fishing vessels" as defined under the Shipping Act. (46 U.S.C., §§ 116, 2101(11a).)

**A.    The Department's Residency Rule.**

144. The Residency Rule, subdivision (d) of section 43-2.4 of the State's rules and regulations (6 N.Y.C.R.R.) states:

> A permit issued to a vessel owner or lessee shall identify the vessel to be used in the harvest of surfclams and ocean quahogs. No vessel may be used in the surfclam and ocean quahog fishery without being specifically identified on a permit issued in the name of the owner or lessee of the vessel. <u>Only a vessel owned by a resident may be identified on a permit issued to a resident.</u>

(*Id.,* (underline added))

145. The Residency Rule facially prohibits the use of fishery endorsed vessels in the New York Surf Clam Fishery based solely on the state of residency of the vessel owner.

146. The Residency Rule bars the right of out-of-state vessel-owning companies or individuals to lease their documented and "fishery" endorsed vessels of the United States to New York Harvesting Companies for use in the Fishery.

147. Concomitantly, the Residency Rule prohibits all Harvesting Companies in the Surf Clam Fishery from "replacing" the vessels identified to their Surf Clam Permits with vessels leased from out-of-state vessel-owning companies or entities.

**B.    The Department's Application of the Residency Rule.**

148. On October 20, 2016 various of the Harvesting Companies (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam) contracted with Plaintiff LET Vessels to lease/charter vessels owned by LET Vessels for use in the Fishery.

149. On October 27, 2016 these Harvesting Companies notified the Department of their intent pursuant to 6 N.Y.C.R.R., § 43.3.5(a) & (c) to replace their identified vessels - then disqualified from use under the Single Permit Rule - with vessels owned by LET Vessels. (*Exhibit "H", hereto*)

150. On November 23, 2016 the department denied the requests of four of these companies by letter citing as one ground the fact that the owner of the intended replacement vessels not a New York company.  The Denial Letters stated:

> As stated above, any vessel to be considered for replacement of an eligible vessel in the Atlantic Ocean surfclam Fishery must be owned by a resident of the State of New York as required by 6 NYCRR Subpart 43-2.4[,]

and, therefore, that LET Vessels' surf clam vessels are:

> not ['eligible' vessels] and [are] not authorized to harvest in New York's Atlantic Ocean Surfclam fishery"

under the Residency Rule. (*Exhibit "G"*, pages 2, 4, 6 & 8.)

**C.** **The Residency Rule is Pre-Empted Under Federal Law.**

151.   The Residency Rule facially prohibits out-of-state vessel owning companies from leasing fishery endorsed vessels for use in the New York Fishery based solely on the non-New York residency of the vessel's owner.

152.   The Residency Rule also facially prohibits Harvesting Companies from using fishery endorsed vessels in the New York Fishery that are leased from out-of-state vessel-owing companies based solely on the out-of-state residency of the vessel's owner.

153.   The Residency Rule serves no legitimate or compelling local governmental, environmental, health, safety, police, or welfare function.  It is an entirely protectionist measure designed to limit solely to New York vessel-owning residents the right to lease vessels for use in the New York Surf Clam Fishery and; to deny out-of-state resident vessel owners the right to lease vessels for use in the Fishery.

154.   Undoubtedly, in other states vessels exist that are configured and capable of being used to harvest surf clams, are also "fishery" endorsed vessels of the United States under the Shipping Act, and their owners would benefit by the grant of the requested relief.

155.   By the application of the Residency Rule (6 N.Y.C.R.R. §§ 43-2.4(d)), the defendants have violated the Supremacy Clause of the Constitution by directly restricting the right of Plaintiff LET Vessels - and by implication vessel owners from all other states - to lease/charter its fishing vessels for use in New York's Fishery for the very purpose for which they were

"fishery" endorsed under the laws of the United States. (46 U.S.C., §§ 106, 12113)

156. Similarly, by the defendants' application of the Residency Rule in its Denial Letters the Plaintiff Harvesting Companies have been unconstitutionally denied the right to use fishery endorsed vessels from any state of the United States.

157. The plaintiffs have been damaged in their businesses, and by the denial of their constitutional and statutory rights, by the defendants' actions, and that harm is both irreparable and will continue to occur into the future absent equitable relief from this Court.

158. Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

159. Such violations of the plaintiffs' rights as secured under the Shipping Act are occurring and will continue in the absence of injunctive relief.

160. Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the Court is warranted in declaring that the Residency Rule is pre-empted from restricting the use of vessels that are "fishery" endorsed under the Shipping Act. (46 U.S.C., §§ 106, 12113), and the Court may enjoin the further application or enforcement of the Residency Rule.

## AS AND FOR THE THIRD CAUSE OF ACTION
### (U.S. Constitution, Art. VI, cl. 2 - Supremacy Clause - the "Seventy-Foot Rule")

161. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "160" as if fully set forth herein at length.

### A.    The Seventy-Foot Rule.

162. The New York Environmental Conservation Law ("E.C.L.") sets forth the State's compendium of laws regulating the fisheries in the inshore and near-shore areas of New York

37

- those areas contiguous to its coasts and its "marine and coastal district" - for a distance of three miles from the Atlantic ocean shore.

163.    The Seventy-Foot Rule (E.C.L. § 13-0349) states, in relevant part:

Taking of fish for commercial purposes.

1.    No person shall take food fish, <u>shellfish</u>, or crustacea from the waters of the marine and coastal district <u>for commercial purposes using a commercial fishing vessel longer than seventy feet in registered length</u>. . . . .

2.    However, vessels being used to take food fish, <u>shellfish</u> or crustacea from the waters of the marine and coastal district prior to July first, nineteen hundred ninety-seven shall be <u>exempt from the registered length requirement</u> and the department shall publish a list of such vessels. In addition, such vessels which <u>are exempt from such seventy foot length requirement</u>, and are on the list published pursuant to this section, shall also be permitted to be replaced one time without loss of such exemption.

3.    All vessels of sixty-three feet or greater registered length may be replaced one time by a new vessel of up to ten percent greater registered length.

(*Id.* (underline added))

**B.    The Unconstitutional Genesis of the Seventy-Foot Rule.**

164.    The Seventy-Foot Rule is the most recent iteration of E.C.L., § 13-0349 a statute that, as initially adopted in 1986, contained provisions limiting the use of fishing vessels in New York waters to an overall length of 90-feet. This law was found to be unconstitutional by this Court in 1989 (*American Prince, Ltd. v. Jorling ("American Prince"),* 710 F. Supp. 893 (E.D.N.Y., 1989).

165.    The *American Prince* case declared the Ninety-Foot Rule unconstitutional based on findings that: (1) the size of New York owned vessels in the fishing fleet in New York was generally

38

less than ninety feet in length as compared with out-of-state vessels which largely exceeded ninety feet, and; (2) that there was a legislative acknowledgment that the purpose of the law was designed to prohibit or reduce the number of out-of-state resident participants in New York's fisheries. (*Id.*)

166.   E.C.L. § 13-0349 was re-codified in 1997 to <u>reduce</u> the vessel length requirement from the objectionable ninety-foot limitation to a <u>more restrictive</u> seventy-foot limitation (N.Y. Laws 1997, ch. 263) and, again, for the purpose of limiting new out-of-state entrants into the New York fisheries. (*Exhibit "I", hereto*)

167.   In 2010, the Seventy-Foot Rule was amended to allow for the replacement of any vessel by another vessel of 10% greater length, owing to the fact that the nature of the Surf Clam Fishery had changed and that older and smaller vessels were no longer safe to harvest the maximum daily harvests allowed under law. (N.Y. Laws of 2010, ch. 485) At the time of this amendment the only vessels in the Fishery were New York-owned vessels.

168.   Nonetheless, the amendments creating the Seventy-Foot Rule were also driven by the intent to preclude out-of-state fishing companies from coming into New York's fisheries as noted in the legislative history of both acts amending E.C.L. § 13-0349. (*Exhibits "I" & "J", hereto*)

C.   **The Department has Applied the Seventy-Foot Rule.**

169.   On October 20, 2016 various of the Harvesting Companies (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam) contracted with Plaintiff LET Vessels to lease/charter surf clam vessels owned by LET Vessels for use in the Fishery.

170.   On October 27, 2016 these Harvesting Companies notified the Department, pursuant to 6

N.Y.C.R.R., § 43.3.5(a) & (c), of their intent to replace the vessels identified to their permits - now disqualified from use under the Single Permit Rule - with vessels owned by LET Vessels, LLC - a non-New York company. (*Exhibit "H"*)

171.    On November 23, 2016 the Department issued Denial Letters stating that the intended replacement vessels "[do] not meet the vessel length restrictions of ECL § 13-0349" and, therefore, are "not ['eligible' vessels] and [are] not authorized to harvest in New York's Atlantic Ocean Surfclam fishery" under the Seventy-Foot Rule. (*Exhibit "G"*, pages 2, 4, 6 & 8)

172.    As a result, these Harvesting Companies were unable to harvest their IFQ allocations, and plaintiff LET Vessels could not lease its vessels to the harvesting companies for use, to the financial detriment of both the Harvesting Companies and LET Vessels.

**D.      The Seventy-Foot Rule is Pre-Empted Under Federal Law.**

173.    The Seventy-Foot Rule facially prohibits harvesting companies from using "fishery" endorsed vessels under the Shipping Act in the Fishery based solely on the length of the vessel in question.

174.    The Seventy-Foot Rule serves no legitimate or compelling local governmental, environmental, health, safety, police, or welfare function.

175.    The Seventy-Foot Rule is a protectionist measure designed to limit solely to New York residents the right to lease the vessels that can be used in New York waters, and in the Fishery.

176.    By enforcing the Seventy-Foot Rule the Defendants have violated the Supremacy Clause of the Constitution by directly restricting the right of federally documented and "fishery"

endorsed vessels to be used in New York waters for the very purposes for which they were "fishery" endorsed under the laws of the United States. (46 U.S.C., § 12113)

177. By their application of the Seventy-Foot Rule the defendants have violated the Supremacy Clause of the Constitution by prohibiting Plaintiff LET Vessels from chartering its "fishery" endorsed vessels for use in the Fishery contrary to the authority of the Shipping Act. (46 U.S.C., §§ 106, 12113)

178. Similarly, by the Department's application of the Seventy-Foot Rule in 2016 the Harvesting Companies Bay Head, Freeport Sea Clam, Off Shore Diving, and PEK Clam Co., have been unconstitutionally denied the right to use fishery endorsed vessels to harvest their IFQ allocations, to these harvesting companies' financial detriment.

179. The plaintiffs have been damaged in their businesses by the denial of constitutional and statutory rights by the actions of the defendants, and that harm is both irreparable and will continue to occur absent equitable relief from this Court.

180. Such adverse impacts and the irreparable harms attendant thereto will continue in 2017 and thereafter as long as the Seventy-Foot Rule remains effective.

181. Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

182. The violation of plaintiffs' rights as secured under the Shipping Act are occurring and will continue in the absence of injunctive relief.

183. Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the Court is warranted in declaring that the Seventy-Foot Rule is pre-empted by the authority granted to vessels that are "fishery" endorsed under the Shipping Act (46 U.S.C.,

§§ 106, 12113), and the Court may enjoin the further application and enforcement of the Seventy-Foot Rule.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(U.S. Constitution, Art. I, § 8 - Commerce Clause - the "Single Permit Rule")**

184.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "183" as if fully set forth herein at length.

185.   The third clause of section 8 of Article I of the United States Constitution states:

> The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several states[.]

(*Id.*)  For reasons addressed below it is shown that the Single Permit Rule adversely impacts and unlawfully regulates interstate commerce in violation of the Commerce Clause.

**A.     Federal Law Establishes that the Fisheries of the United States are an Integral Part of the Interstate Commerce of the Nation.**

186.   The Magnuson-Stevens Federal Fisheries Act (16 U.S.C., § 1801 *et seq.* (the "Magnuson-Stevens Act")) declares and finds, that:

> The fish off the coasts of the United States . . . constitute valuable and renewable resources. These fishery resources contribute to the food supply, economy, and health of the Nation[.]

(*Id.,* § 1801(a)(1).)

187.   The Magnuson-Stevens Act declares and finds, that:

> Commercial and recreational fishing constitutes a major source of employment and contributes significantly to the economy of the Nation.

(*Id.,* § 1801(a)(3).)

188.   The Magnuson-Stevens Act declares that the purpose of the Act, among others, is to:

> take immediate action to conserve and manage the fishery resources found off of the coasts of the United States[.]

(*Id.*, § 1801(b)(1).)

189.    The Magnuson-Stevens Act defines "commercial fishing" as:

> fishing in which the fish harvested, either in whole or part, are intended to enter commerce or enter commerce through sale, barter, or trade.

(*Id.*, § 1802(4).)

190.    As the Declaration of J. Lee Snead, Esq., and the Affidavits of Maxi Cohen, Chris Shriver, James Meyers, Brooks Dermont, Jack Collins, John Verbeke, and Charles Corriss supplied with this Complaint all make clear, surf clams harvested from New York's Surf Clam Fishery are, and are intended to be, sold in interstate commerce.

191.    The inability of Harvesting Companies to harvest their IFQ allocations will cause unremediable harm to various of the non-vessel owning Harvesting Companies. (*See, Affid. of M. Cohen; Affid. of C. Shriver; Affid. of B. Dermont; Affid. of J. Collins; Affid. of J. Verbeke.*)

192.    The inability of the Vessel-Owning Companies to lease their vessels to harvest more than IFQ allocation in any year will cause unremediable harm to various of the Vessel Owning Companies. (*See, Affid. of B. Dermont, Affid. of C. Corriss*)

193.    The application of the Single Permit Rule will largely render the investment made last year by Plaintiff American Pride untenable, and will force it from the industry as it will be able to lease its vessel to only one Harvesting Company to harvest its IFQ allocation. (*See, Affidavit of Charles Corriss, ¶¶ 3-10*)

**B.    No Legitimate or Compelling Local Ground Supports the Single Permit Rule:**

194.    As stated above, the Single Permit Rule was noticed for "proposed rulemaking" on December 15, 2015. (*Exhibit "A"*) Contained within the text of the Notice of Proposed

Rulemaking were provided several grounds identified by the Department to support the "need" for the rulemaking.

195.   The prime concern identified by the defendants in the Notice of Proposed Rulemaking, the Notice of Adoption of the Single Permit Rule, and in the administrative record discussing the defendants' intentions in adopting the Single Permit Rule was the alleged "monopolistic" practices of some participants in the Fishery.

196.   As addressed in the affidavits accompanying this complaint the defendants' "monopoly" concern is both unsupported and unsupportable inasmuch as no actual monopoly has occurred, and that the vast majority of harvesting companies had markets for their IFQ allocations since 2014 and, for 2016, all harvesting companies had markets for their harvests. (*Affid. of M. Cohen,* at ¶¶ 3, 6-7; *Affid., of J. Collins,* at ¶¶ 5, 6; *Affid of B. Dermont, at* ¶¶ 6,13, 19, 22, 31-34, 46-60)

197.   In fact, it is clear that the only reason that Harvesting Companies were not able to harvest or sell their IFQ allocations in 2016 is due to the Department's action in adopting and enforcing the Single Permit Rule.

198.   The Department is not authorized to make a finding of "monopoly" and no actual finding has been made.

199.   More important, no such findings have been made by the New York Attorney General, the only state official authorized to investigate and bring remedial action in that regard. (*See,* N.Y. Gen. Bus. L., Article 22 & § 343).

200.   Rather, the defendants' use of the "monopoly" argument is nothing more than a thinly veiled attempt to apply a patina of legitimacy to the Single Permit Rule.  The actual purpose behind

the Single Permit Rule noticed in the Notice of Proposed Rulemaking (*Exhibit "K"*), and in the Notice of Adoption of the Single Permit Rule (*Exhibit "A"*), is to benefit certain "independent vessel owners" at the expense of a "certain sector" of the surf clam industry - the Harvesting Companies, Vessel Owning Companies and Shipping Companies who are plaintiffs herein - who have corporate business and/or ownership affiliations with the out-of-state plaintiff SeaWatch International, Ltd. (*Exhibit "K",* at 5), a clearly unconstitutional intent.

201.   Internal Department memoranda confirm this discriminatory intent for adopting the Single Permit Rule and make clear that the "certain sector" of the industry with affiliations to Seawatch International are the targets of the Single Permit Rule subject to the Department's animus. (*Exhibit "L", hereto*) [8]

202.   Each of the companies comprising this "certain sector" are considered by the Department to be under "individual ownership" of non-New York residents (*id.,* at NYSDEC000179) notwithstanding that each of the targeted harvesting companies and the shipping company are "traditional" participants in the Fishery.

203.   Moreover, there is no compelling permissible "local interest" that warrants the imposition of the Single Permit Rule.

204.   No true resource protection interest is at stake because absent the Single Permit Rule no more surf clams will be taken from the Fishery than are presently authorized by the Department

---

8.      These harvesting companies are: Aqua Harvesters; Bay Head; C. Seaman Seafood; Doxsee Sea Clam; Lady Kim; Lyons Fisheries; Off Shore Diving; PEK Clam Co.; St. Peter Dock and Winter Harbor Brands.   As well, TMT Vessels (NY) and Oceanside Packers are also targets of the Department's animus.

to be taken presuming the correctness of the Department's assertion that sufficient New York based replacement vessels could be obtained to do so.

205. Even with the Single Permit Rule in place, companies could, in theory, harvest their IFQ allocations if they were to rehabilitate their moribund vessels or to purchase others. Thus, the Single Permit Rule works no benefit to the resource and no actual resource conservation rationale supports the adoption of the Single Permit Rule.

206. Lastly, were a resource conservation concern truly at play the Department has other means available to reduce the annual quota of surf clams to be taken, and can do so in a manner that is not pre-empted by federal law or otherwise violates the Commerce Clause. Thus, less restrictive means of obtaining the alleged resource "benefit" identified by the defendants is available, presuming that a resource benefit is what is to be achieved.

207. Presuming a benefit is shown, the Single Permit Rule violates the Commerce Clause because it imposes a burden on interstate commerce that is not justified by any alleged benefit it creates.

208. Accordingly, based on Departmental documents in the administrative record of the adoption of the Single Permit Rule it is clear that the Department has attempted to support its adoption on rationales that are either protectionist in nature, or serve no legitimate or compelling local interest of the State.

C.      **The Single Permit Rule Adversely Impacts the Plaintiffs.**

209. The effect of the Single Permit Rule is to eliminate the use of the only surf clam vessels available to a majority of the Harvesting Companies for use in the Fishery under Departmental regulations - those vessels presently being used.

210. The majority of the non-vessel owning Harvesting Companies are left with the Hobson's choice of: (1) purchasing or refitting vessels at a cost that is not justified by the value of the IFQ allocations they seek to harvest, or: (2) to violate the Single Permit Rule or another of the laws challenged herein to obtain a vessel, and risk the loss of their vessels and the imposition of criminal penalties, or; (3) to simply forego harvesting the only revenue generating asset they possess and suffer a corporate death.

211. Moreover, the effect of the Single Permit Rule is to deny to the Vessel-Owning Companies the right to charter their "fishery" endorsed vessels to more than one harvesting company in a year, as they are authorized to do under the Shipping Act, and as they have done since the inception of the limited-entry fishery regulations in 1993, or face similar choices to violate the laws or forego the use of their vessels and sustain significant a reduction in business.

212. Lastly, as the unavailability of vessels in the Fishery reduces the total amount of surf clams taken from the Fishery, and each company in the downstream of interstate commerce - the shipping company plaintiffs and the processor/distributor plaintiffs - are adversely impacted.

213. The adverse effects felt by the various plaintiffs are further identified in the Affidavits of Maxi Cohen; Chris Shriver; James Meyers; Brooks Dermont; Jack Collins John Verbeke and Charles Corriss, in support of this action.   Accordingly, all plaintiffs are adversely affected by the Single Permit Rule.

214. The Single Permit Rule imposes a burden on interstate commerce incommensurate with the questionable benefits alleged to be secured by its adoption.  Indeed the "benefits" alleged to potentially occur as a result of its passage are wholly illusory, are unsupported, or are unlawful.

215. The effect of the Single Permit Rule will be to reduce the harvest of surf clams from the Surf Clam Fishery, causing an adverse downstream effect on interstate commerce to the plaintiffs' detriment, without any true benefit to be achieved, and for reasons that are unconstitutionally impermissible.

216. The plaintiffs have been damaged in their businesses which are in the stream of interstate commerce by the actions of the defendants.

217. Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

218. Such violations of the plaintiffs' rights as secured under the Commerce Clause to the Constitution are occurring and will continue in the absence of injunctive relief.

219. Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the Court is warranted in declaring that the Single Permit Rule violates the Commerce Clause of the United States Constitution, and in permanently enjoining the further application or enforcement of the Single Permit Rule.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (U.S. Constitution, Art. I, § 8 - Commerce Clause - the "Residency Rule")

220. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "219" as if fully set forth herein at length.

221. The third clause of section 8 of Article I of the United States Constitution states:

> The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several states[.]

(*Id.*) For reasons addressed below it is shown that the Residency Rule adversely impacts and unlawfully regulates interstate commerce and violates the Commerce Clause.

48

### A.       New York's Residency Rule.

222.   The Residency Rule states:

> A permit issued to a vessel owner or lessee shall identify the vessel to be used in the harvest of surfclams and ocean quahogs.  No vessel may be used in the surfclam and ocean quahog fishery without being specifically identified on a permit issued in the name of the owner or lessee of the vessel.  <u>Only a vessel owned by a resident may be identified on a permit issued to a resident</u>.

*(6 N.Y.C.R.R., § 43-2.4(d))*.

223.   The Residency Rule prohibits the use of "fishery" endorsed vessels under the Shipping Act in the Fishery based solely on the state of residency of the vessel owner.

224.   The Residency Rule prohibits out-of-state Vessel-Owning Companies or individuals from exercising the right to lease their "fishery" endorsed vessels to the Harvesting Companies.

225.   Concomitantly, the Residency Rule prohibits all Permit holding Harvesting Companies from exercising the right to use fishing vessels owned by out-of-state Vessel-Owning Companies or individuals in the harvest their IFQ allocations.

### B.       The Department's Application of the Residency Rule.

226.   On October 20, 2016 various of the Harvesting Companies (Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; PEK Clam) contracted with Plaintiff LET Vessels to lease/charter vessels owned by LET Vessels for use in the Fishery.

227.   On October 27, 2016 these Harvesting Companies notified the Department of their intent pursuant to 6 N.Y.C.R.R., § 43.3.5(a) & (c) to replace the vessels identified to their Permits - having been disqualified from use under the Single Permit Rule - with vessels owned by LET Vessels, LLC. *(Exhibit "H")*

228.   By letters dated November 26, 2016, the Department's denied the requests of four of these

companies and cited as one ground the fact that the owner of the intended replacement vessels is an out-of-state company.  The Denial letters stated:

As stated above, any vessel to be considered for replacement of an eligible vessel in the Atlantic Ocean surfclam Fishery must be owned by a resident of the State of New York as required by 6 NYCRR Subpart 43-2.4[,]

and, therefore, that LET Vessels' surf clam vessels are:

not ['eligible' vessels] and [are] not authorized to harvest in New York's Atlantic Ocean Surfclam fishery"

under the Residency Rule. (*Exhibit "G"*, pages 2, 4, 6 & 8)

**C.**     **The Residency Rule Adversely Impacts the Plaintiffs**.

229.     By its terms, the Residency Rule denies Harvesting Companies the right to charter or lease out-of-state vessels to harvest their IFQ allocations.

230.     By its terms, the Residency Rule denies "non-resident" vessel-owning companies the right to lease/charter their fishing vessels to Permit holding Harvesting Companies for use in the Fishery.

231.     The defendants' application of the Residency Rule has adversely impacted, and will continue to adversely impact, the out-of-state vessel-owning company LET Vessels by rendering its vessels unavailable for use in the Fishery - a direct impact on and regulation of interstate commerce.

232.     The defendants' application of the Residency Rule has and will continue to adversely impact the Harvesting Companies by prohibiting them from leasing vessels from non-resident vessel owning companies for use in the Fishery - a direct impact on and regulation of interstate commerce.

233.     The defendants application of the Residency Rule has and will continue to damage the

shipping/processor/distributor plaintiffs by a reducing of the surf clam meats they need in their businesses - a direct impact on and regulation of interstate commerce.

**D.      The Residency Rule Violates the Commerce Clause.**

234.    By its terms the Residency Rule facially discriminates against out-of-state vessel owners, and adversely affects and regulates interstate commerce in favor of intra-state corporations and entities, and does so based solely on the fact that the particular vessel in question is not owned by a New York resident.

235.    The effect of the Residency Rule is to deprive plaintiff LET Vessels the right to lease its vessels to the Harvesting Companies for use in the Fishery.

236.    The effect of the  Residency Rule is to deprive over half of the Harvesting Companies the ability to harvest their IFQ allocations from the Fishery from out-of-state fishing vessels.

237.    The effect of the Residency Rule, in conjunction with the Single Permit Rule, is to deprive over half of the Harvesting Companies the ability to harvest their IFQ allocations.

238.    The loss of nearly half of the surf clam harvest from the Fishery in 2016, and the loss of over half of the harvest in 2017 and future years, has reduced in 2016, and will continue to reduce the amount of surf clams available to the shipper/processor/distributor plaintiffs, and will cause an adverse downstream effect on interstate commerce.

239.    These adverse impacts are without any legitimate or compelling local benefit to be achieved.

240.    To the extent there is an arguable local resource benefit in reducing the number of clams to be taken from the Fishery, that benefit is not accomplished by the least restrictive means because the Department has authority to reduce the total annual catch of surf clams under existing regulations in a manner that does not implicate the Commerce Clause.

241.    The Residency Rule, section 43-2.4(d), denies to out-of-state vessel-owning companies the
        right to charter their vessels for use in the New York Fishery.  As such it is in direct
        contravention of and facially violates the Commerce Clause.

242.    The effect of the Residency Rule is to eliminate the Harvesting Companies' ability to obtain
        surf clam vessels for use that are owned by non-New York companies or individuals based
        on the fact of the out-of-state company's residency status.

243.    Moreover, the effect of the Residency Rule is to deny to non-resident vessel-owning
        companies the right to charter their vessels to New York harvesting companies and, as a non-
        resident vessel-owning company, LET Vessels is has been and will continue to be adversely
        affected by the Residency Rule.

244.    As the unavailability of vessels in the New York Surf Clam Fishery ultimately reduces the
        total amount of surf clams taken from the Surf Clam Fishery, each company in the stream
        of interstate commerce - the Harvesting Companies, the vessel-owning plaintiffs, the
        shipping company plaintiff and the processor/distributor plaintiffs - are all incidentally
        adversely affected by the Residency Rule, as is interstate commerce.

245.    The plaintiffs have been damaged in their businesses which are in the stream of interstate
        commerce by the actions of the defendants.

246.    Justiciable causes of action are pleaded as between the respective plaintiffs and the
        defendants such that the Court should declare the rights and relationships of the parties.

247.    Such violations of the plaintiffs' rights as secured under the Commerce Clause to the
        Constitution are occurring and will continue in the absence of injunctive relief.

248.    Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., §

1983, the Court is warranted in declaring that the Residency Rule facially violates the Commerce Clause, and the Court may permanently enjoin the application and enforcement of the Residency Rule.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (U.S. Constitution, Art. I, § 8 - Commerce Clause - the "Seventy-Foot Rule")

249. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "248" as if fully set forth herein at length.

250. The Seventy-Foot Rule, section 13-0349 of the E.C.L., violates the dormant Commerce Clause because it was enacted to protect New York commercial fishery interests from out-of state competition.

251. All but one of the New York-owned vessels presently used in the Fishery exceed seventy-feet in length (*Exhibit "D"*) and each of them are grandfathered by exceptions provided for within subdivisions (b) or (c) of the statute.   Thus, all vessels owned by New York resident companies and harvesting within the Surf Clam Fishery are protected under the statute.

252. Nonetheless, as the vessels owned by LET Vessels all exceed 70 feet in length (*Exhibit "D"*) and the exceptions provided for in the Seventy-Foot Rule are not available to it.  The impact of the law is to deprive LET Vessels and the Harvesting Companies of the ability to charter for use, or to use, vessels exceeding seventy-feet in length. (E.C.L. § 13-0349 (a))

253. Accordingly, the Seventy-Foot Rule places an economic burden on the out-of-state plaintiff LET Vessels, inasmuch as LET Vessels is compelled to obtain vessels that do not exceed 70 feet in length in order to participate in the Fishery.

254. The intent and impact of the Seventy-Foot Rule is to work a discrimination against out-of state vessel owning companies and vessels for protectionist purposes, an intent well

53

understood and expressed in the legislative history of the Seventy-Foot Rule at the time it the amendments to E.C.L. § 13-0349 were adopted in its present form.

255.   Evidence of this is contained in the legislative history to the New York Laws of 1997, chapter 263, which amended E.C.L. § 13-0349, in the form of a Memorandum from the Senior Deputy Commissioner of Department of Environmental Conservation to Counsel to the Governor - M. C. Finnegan, dated 7/23/97 (the "1997 Department Memorandum"), memorializing the purpose of the legislation creating the Seventy-Foot Rule. (*Exhibit "I"*, pages 0000015 through 0000016)

256.   The Memorandum underscores "the potential for unregulated growth in commercial fishing effort as a result of restrictions on commercial fishing elsewhere" and notes that New York's fisheries "could be exploited by vessels currently fishing elsewhere" as the underlying concerns of the legislation. (*Id.,* at 0000015)

257.   The 1997 Department Memorandum then identifies the purpose of the Seventy-Foot Rule as being to:

> prevent a disruptive influx to New York's waters of large offshore fishing vessels displaced [from offshore fisheries] by federal regulations[.]

(*Exhibit "I"*, at 0000016 (initial bracketing original))   Clearly, an anti-competitive protectionist concern over the "influx" of out-of-state fishery interests into New York's waters is what underlay the adoption of this law.

258.   There is no compelling or permissible "local interest" that warrants the prohibition on use of surf clam vessels in excess of any particular length within the Fishery.   Existing regulations prohibit the taking of more than a specified amount of surf clams by any harvesting company in any one day.   Thus, the size of a vessel is immaterial to the daily

harvest that can be taken from it.

259. This Court has previously determined that this law is unconstitutional for the same grounds advanced here. A demonstrated protectionist intent, coupled with the fact that the vast majority of New York fishing vessels were not affected by the ninety-foot length restriction set forth in this statute's predecessor (E.C.L. § 13-0349) - whereas out-of-state plaintiffs were adversely economically impacted - were the grounds for finding this same law unconstitutional as violating the dormant Commerce Clause when this Court addressed it and permanently enjoined its enforcement in the *Atlantic Prince* case.

260. No difference from the *Atlantic Prince* case is seen under the facts and circumstances of the present Seventy-Foot Rule other than the length restriction stated in the law. The purpose of the law is to preclude out-of-state fishing vessels from harvesting in New York waters for protectionist purposes.

261. Plaintiffs Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; and PEK Clam, sought replacement of their vessels with vessels chartered from Plaintiff LET Vessels. (*Exhibit "H", Affid. of J. Meyers*, ¶¶ 12-13) The vessels owned by LET Vessels and identified for use by the Harvesting Companies exceed seventy-feet in length. (*Exhibit "E"*)

262. The Department denied four of these harvesting companies' requests due to the identified replacement vessels exceeding seventy-feet in length. (*Exhibit "G",* pages 2, 4, 6, 8.)

263. Accordingly, the impact of the Seventy-Foot Rule and the defendants' application thereof is to deny these specific Harvesting Companies, and by extension all Harvesting Companies, the ability to use vessels new to the Fishery that exceed seventy-feet in length.

264. While the prohibition on the use of such vessels falls on the Harvesting Companies, the

prohibition on their use falls particularly hard on non-resident vessel owning companies such as LET Vessels as it is their vessels that exceed the length restriction and cannot be used in conformity with the Seventy-Foot Rule. Thus, both of the parties to the lease/charter transaction were adversely impacted by the Seventy-Foot Rule in 2016. Similar adverse impacts will occur in 2017 and thereafter should the Seventy-Foot Rule remain effective.

265.    Finally, as the unavailability of vessels in the Fishery - and thereby the reduction of surf clams taken from the Fishery - has had and will continue to have impacts on each plaintiff company in the stream of interstate commerce as is attested to in the affidavits provided with this Complaint. All plaintiffs here are adversely affected by the Seventy-Foot Rule.

266.    The plaintiffs have been damaged in their businesses which are in the stream of interstate commerce by the actions of the defendants, and that damage will continue to occur absent equitable relief from this Court.

267.    Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties herein.

268.    Such violations of the plaintiffs' rights as secured under the Commerce Clause to the Constitution are occurring and will continue in the absence of injunctive relief.

269.    Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the Court is warranted in declaring that the Seventy-Foot Rule violates the Commerce Clause, and the Court may permanently enjoin the further application and enforcement of the Seventy-Foot Rule as it previously did for the predecessor to this very statute and for similar reasons as those stated in the *Atlantic Prince* decision.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Privileges & Immunities Clauses - U.S. Constitution, Art. IV, § 2; 14th Amend., § 1 - The "Residency Rule")

270.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "269" as if fully set forth herein at length.

271.   Section 2 of Article IV of the United States Constitution states, in relevant part

> The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens of the several states.

(*Id.*)   The Privileges and Immunities Clause of the United States Constitution mandates that the residents of one state are entitled to enjoy the same rights as citizens of other states.

272.   The Privileges and Immunities Clause of the 14th Amendment guarantees only that states may not abridge the privileges and immunities of citizens of the United States with regard to federally protected rights. The Fourteenth Amendment to the United States Constitution states:

> No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States.

(*Id.,* 14th Amend., § 1)

273.   Nonetheless, one of the core privileges protected under the Privileges and Immunities Clauses of both Article IV and the Fourteenth Amendment to the United States Constitution is the right to carry on interstate commerce.

274.   The Single Permit Rule, the Residency Rule, and the Seventy-Foot Rule each work to deny to the plaintiffs the right to engage in interstate commerce.

275.   The Shipping Act grants to "fishery" endorsed vessels the right to be used in the "fisheries" of the United States (46 U.S.C., §§ 106, 108, 12113), which are part of the commerce of the

United States under the Magnuson Act. (16 U.S.C., §§ 1801(3) & 1802(d)).

276. The harvesting of New York surf clams, their shipment to other states for processing, packaging, distribution and sales throughout the United States, and internationally, is clearly intended to inject New York's surf clams into an interstate stream of commerce by all participants in that stream of which all plaintiffs are a part.

**A.    The Residency Rule -**

277. The regulations administering the Atlantic Ocean portion of New York's marine and coastal district (6 N.Y.C.R.R., Part 43-2) authorize the Harvesting Companies to harvest in the Fishery.  Part 43-2 of the regulations establishes the permit requirements applicable to the Surf Clam Fishery (6 N.Y.C.R.R., § 43-2.4) and states:

> (A)    that "a permit issued to a vessel owner or lessee shall identify the vessel to be used in the harvest" and that "Only a vessel owned by a resident may be identified on a permit issued to a resident" (§ 43-2.4(d))(the "Residency Rule")[.]

*(Id.)*

**B.    The Department's Application of the Residency Rule.**

278. In October 2016, after it became clear that the Single Permit Rule would prohibit all existing New York surf clam vessels from harvesting more than one IFQ allocation, Harvesting Companies Bay Head; Freeport Sea Clam; Lyons Fisheries; Off Shore Diving; and PEK Clam sought to replace the vessels identified on their Permits with vessels chartered from Plaintiff LET Vessels, a New Jersey limited liability company. (*Exhibit "H", Affid. of J. Meyers,* ¶¶ 12-13)

279. The Department denied four requests on November 23, 2016 stating that the vessels are:

> owned by a New Jersey (non-resident) company and do[] not meet the vessel

permit requirements of 6 NYCRR Subpart 43-2.4(d) to be identified as the eligible vessel on the Surfclam Atlantic Ocean Owner/Lessee Permit[s.]

(*Exhibit "G"*, page 2, 4, 6, 8.)

280.    As a result, these Harvesting Companies were unable to find surf clam vessels available in New York, and were barred from looking outside New York to lease vessels, could not harvest their IFQ allocations, and were, therefore denied the ability to earn income in 2016 by the application of the Residency Rule. (*Affid. of B. Dermont,* ¶ 46, 52-53, 58)

281.    The language of the Residency Rule ensures that no Harvesting Company in the Fishery can lease an out-of-state vessel.

282.    The defendants' application of the Residency Rule to deny out-of-state vessel-owing companies the ability to lease their vessels for use in the Fishery, and to deny the Harvesting Companies the right to use such vessels, is an unlawful policy and practice of the Department that continues to date as is evidenced by the Department's denial of the Bay Head, Freeport Sea Clam Co., Off Shore Diving, and PEK Clam Co. notices of replacement for vessels owned by LET Vessels. (*Exhibit "G"*)

283.    Accordingly, the Residency Rule effectively eliminates the interstate chartering of these vessels within New York waters, denying plaintiff LET Vessels the ability to charter any of its vessels to the Harvesting Companies, and denies the Harvesting Companies the right to charter vessels from plaintiff LET Vessels for use in the Fishery, all under color of state law.

284.    One of the privileges and immunities of the laws of the United States is the right to use a federally "documented" and "fishery" endorsed "vessel of the United States" in pursuit of commerce on "the navigable waters of the United States" (46 U.S.C., §§ 106, 108, 116, 12113), and in the "commercial fisheries" "off the coasts of the United States." (38 U.S.C.,

§§ 1801(a)(1) & 1802(4)).

285.   The Residency Rule denies out-of-state vessel owning companies such as plaintiff LET Vessels rights guaranteed under federal law to charter its vessels for use in the New York waters, a violation of section 1 of the 14th Amendment of the United States Constitution.

286.   As well, the Residency Rule denies out-of-state vessel owning companies such as plaintiff LET Vessels the same rights to charter its vessels for use in the New York Surf Fishery that are granted to New York residents under New York law, based solely on the state of residency of the vessel owning company, a violation of section 2 of Article IV of the United States Constitution.

287.   Inasmuch as the Residency Rule does not place the citizens of the United States (LET Vessels, and other out-of-state vessel-owning companies) on the same footing as the citizens of New York for purposes of chartering their vessels for use in the Fishery in interstate commerce, the Residency Rule violates the Privileges and Immunities Clause of Section 1 of the Fourteenth Amendment to the United States Constitution.

288.   Inasmuch as the Residency Rule does not place the citizens of New York (the "Harvesting Companies") on the same footing as the citizens of the several states for purposes of leasing and using fishing vessels owned by out-of-state residents in interstate commerce, the Residency Rule violates the Privileges and Immunities Clause of Section 2 of Article IV of the United States Constitution.

289.   The plaintiffs have been damaged in their businesses which are in the stream of interstate commerce by the actions of the defendants, and that damage will continue to occur absent equitable relief from this Court.

290. Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

291. Such violations of the plaintiffs' rights as secured under the Privileges and Immunities Clauses to the Constitution are occurring and will continue in the absence of injunctive relief.

292. Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the plaintiffs are entitled to a declaration that the Residency Rule violates the Privileges and Immunities Clauses of section 2 of Article IV of, as well as section 1 of the Fourteenth Amendment to, the United States Constitution and the Court should permanently enjoin its further application and enforcement.

**AS AND FOR A EIGHTH CAUSE OF ACTION**
**(Equal Protection Clause - U.S. Constitution, 14th Amend., § 1 - The "Residency Rule")**

293. Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "292" as if fully set forth herein at length.

294. The Equal Protection Clause of the 14th Amendment guarantees that states may not discriminate against or treat differently citizens within its boundaries who are similarly situated with regard to federally protected rights and, in relevant part, states "nor shall any state . . .":

> deny to any person within its jurisdiction the equal protection of the laws.

(*Id.,* 14th Amend., § 1)

295. The Residency Rule (6 N.Y.C.R.R., § 43-2.4(d)) states that out-of-state vessels may not be used to take surf clams from the Fishery by any of the existing "resident" Harvesting Companies.

296. All harvesting companies in the Fishery hold "resident" Surf Clam Permits.

297.   The Department has opined that no non-New York owned vessels ("out-of-state vessels") may be used to take surf clams from the Surf Clam Fishery.

298.   The Residency Rule, denies the Harvesting Companies the right to hire out-of-state vessels to harvest their IFQ allocations in the Fishery.

299.   Plaintiff LET Vessels, LLC is an out-of-state vessel owner, a resident of New Jersey.

300.   Plaintiff LET Vessels, LLC and four Harvesting Companies (Bay Head, Inc.; Freeport Sea Clam Co., Inc.; Off Shore Diving Corp., and PEK Clam Co., Inc. to harvest their IFQ allocations in the Fishery in 2016.

301.   In October 2016, the Harvesting Companies submitted notices of their intention to "replace" the vessels on their permits with out-of-state vessels owned by LET Vessels, LLC. (*Exhibit "H"*)

302.   Each of the vessels leased by LET Vessels was documented and fishery endorsed under the Shipping Act. (*Id.*)

303.   By letters dated November 26, 2016 (*Exhibit "G"*) the defendants denied the Harvesting Companies the right to use the out-of-state vessels owned by LET Vessels as replacement vessels.

304.   The Denial Letters sent to the Harvesting Companies by the defendants identified the Residency Rule as a reason for the denial of the use of the out-of-state vessels.

305.   As a result of the defendants' determinations Plaintiff LET Vessels was not able to operate its vessels in New York's Surf Clam Fishery.

306.   Plaintiff LET Vessels was denied the right to operate its vessels in the New York Surf Clam Fishery based solely on its out-of-state corporate residency.

307.   Compared with others similarly situated - New York owned surf clam vessel owners - plaintiff LET Vessels was selectively and disparately treated based solely on its New Jersey corporate residency.

308.   The selective treatment of plaintiff LET Vessels by the defendants in denying the Harvesting Companies the ability to replace their vessels with those owned by LET Vessels is based on an impermissible consideration - the state of residency of the out-of-state vessel owner LET Vessels.

309.   The defendants' treatment of LET Vessels in denying the harvesting companies the right to use out-of-state owned vessels is intended to deny the Harvesting Companies the right to earn a living.

310.   The defendants' treatment of LET Vessels in denying the Harvesting Companies' right to use out-of-state vessels is intended to deny plaintiff LET Vessels the right to earn a living and to participate in interstate commerce.

311.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state owned vessels is intended to deny the Harvesting Companies the right to participate in interstate commerce.

312.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels is intended to deny the Harvesting Companies the right to use out-of-state vessels in New York contrary to the authorizations granted to such vessels under the Shipping Act.

313.   The defendants' treatment of LET Vessels in denying the Harvesting Companies' right to use out-of-state vessels is maliciously intended to adversely affect the Harvesting Companies as

a result of their commercial ties to plaintiff Sea Watch International, an out-of-state processing and distribution facility as is reflected in internal memoranda of the Department.

314. The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels is maliciously intended to adversely affect LET Vessels' as a result of its commercial ties to plaintiff Sea Watch International, an out-of-state processing and distribution facility as is reflected in internal memoranda of the Department.

315. The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels is based on the defendants' bad faith attempt to adversely affect the Harvesting Companies as a result of its commercial ties to Sea Watch International as is reflected in internal memoranda of the Department.

316. The defendants' treatment of LET Vessels in denying the harvesting companies the right to use out-of-state owned vessels is based on the defendants' bad faith attempt to adversely affect the Harvesting Companies as a result of its commercial ties to Sea Watch International as is reflected in internal memoranda of the Department.

317. Plaintiff LET Vessels has been harmed in its business operations by the actions of defendants in denying the Harvesting Companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which is in violation of its rights secured under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

318. The Harvesting Companies (Bay Head, Freeport Sea Clam, Off Shore Diving, PEK Clam Co.) have been harmed in their business operations by the actions of defendants in denying the harvesting companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which are in violation of its rights secured under the Equal Protection

Clause of the 14th Amendment to the United States Constitution.

319.   Plaintiff Sea Watch International has been harmed in its business operations by the actions of defendants in denying the Harvesting Companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which is in violation of its rights secured under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

320.   Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

321.   Such violations of the plaintiffs' rights as secured under the section 1 of the 14th Amendment to the Constitution are occurring and will continue in the absence of injunctive relief.

322.   Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the plaintiffs are entitled to a declaration that the Residency Rule violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Court should permanently enjoin its further application and enforcement.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Equal Protection Clause - U.S. Constitution, 14th Amend., § 1 - The "Seventy-Foot Rule")

323.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "322" as if fully set forth herein at length.

324.   The Equal Protection Clause of the 14th Amendment guarantees that states may not discriminate against or treat differently citizens within its boundaries who are similarly situated with regard to federally protected rights. The Fourteenth Amendment to the United States Constitution states, in relevant part "nor shall any state . . .":

deny to any person within its jurisdiction the equal protection of the laws.

(*Id.,* 14th Amend., § 1)

65

325.   The Seventy-Foot Rule (E.C.L., § 13-0349) states that no commercial fishing vessel greater than seventy feet in length may be used in New York waters. (*Id.,* subdiv. (1))

326.   The Seventy-Foot Rule contains certain exemptions from this rule for vessels that existed in New York waters prior to July 1, 1997 (*id., subdiv. (2)*), and for vessels that have "replaced" other vessels in the Surf Clam Fishery. (*Id., subdiv. (3)*).

327.   All commercial fishing vessels that are new to New York waters that are in excess of seventy feet in length and not subject to subdivision (3) of the seventy-foot rule are barred from being used in the New York Surf Clam Fishery.

328.   The Department has opined that no commercial fishing vessels may be used to take surf clams from the Fishery absent compliance with the Seventy-Foot Rule.

329.   The Seventy-Foot Rule denies the Harvesting Companies the right to hire surf clam vessels in excess of seventy-feet in length to harvest their IFQ allocations in the Fishery.

330.   Plaintiff LET Vessels, LLC is an out-of-state vessel owner, a resident of New Jersey.

331.   Plaintiff LET Vessels, LLC and four Harvesting Companies (Bay Head, Inc.; Freeport Sea Clam Co., Inc.; Off Shore Diving Corp., and PEK Clam Co., Inc., (the "harvesting companies") entered leases to harvest their IFQ allocations in the Fishery in 2016.

332.   Each of the vessels leased by LET Vessels to the Harvesting Companies for use in the Fishery exceeded seventy feet in length. (*Exhibit "E"*)

333.   Each of the vessels leased by LET Vessels for use in the Fishery was documented and fishery endorsed under the Shipping Act. (*Id.*)

334.   In October 2016 the Harvesting Companies submitted notices of their intention to "replace" the vessels on their permits with the vessels owned by LET Vessels, LLC. (*Exhibit "H"*)

335.   On November  26, 2016, the defendants issued Denial Letters denying the Harvesting Companies the right to use the out-of-state vessels owned by LET Vessels as replacement vessels. (*Exhibit "G"*)

336.   In the Denial Letters sent to the plaintiff Harvesting Companies the defendants identified the Seventy Foot Rule as a reason for the denial of the use of the out-of-state vessels.

337.   As a result of the defendants' determinations Plaintiff LET Vessels was not able to operate its vessels in New York's Surf Clam Fishery.

338.   All surf clam vessels in use in New York's waters are owned by New York residents.

339.   Various of the surf clam vessels authorized for use in New York waters under the Seventy-Foot rule are of similar size as those intended for use by the harvesting companies under the leases entered into with plaintiff LET Vessels, but which were denied by the Department's determinations as violating the Seventy-Foot Rule.

340.   Plaintiff LET Vessels was denied the right to operate its vessels in the New York Surf Clam Fishery based solely on the fact that its vessels exceeded seventy-feet in length.

341.   Compared with others similarly situated - commercial fishing vessels authorized for use in New York's waters as being under the seventy-foot length restriction, or under the exemptions provided in the Seventy-Foot Rule - plaintiff LET Vessels was selectively and disparately treated based solely on the size of its vessels.

342.   The selective treatment of plaintiff LET Vessels by the defendants in denying the Harvesting Companies the ability to replace their vessels with those owned by LET Vessels is based on an impermissible consideration - the state of residency of the out-of-state vessel owner LET Vessels.

343.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state owned vessels is intended to deny the Harvesting Companies the right to earn a living in New York.

344.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use its vessels is intended to deny the Harvesting Companies the right to use such vessels in interstate commerce.

345.   The defendants' treatment of LET Vessels in denying the Harvesting Companies' right to use out-of-state vessels is intended to deny plaintiff LET Vessels the right to earn a living.

346.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use its vessels is intended to deny LET Vessels the right to use its vessels in interstate commerce.

347.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use its vessels is intended to deny LET Vessels the right to operate its vessels in New York contrary to the authorizations granted to such vessels under the Shipping Act.

348.   The defendants' treatment of LET Vessels in denying the Harvesting Companies' right to use out-of-state vessels in excess of 70 feet in length is maliciously intended to adversely affect the plaintiff Harvesting Companies as a result of their commercial ties to plaintiff Sea Watch International, an out-of-state processing and distribution facility as is reflected in internal memoranda of the Department.

349.   The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels in excess of 70 feet in length is maliciously intended to adversely affect plaintiff LET Vessels as a result of its commercial ties to plaintiff Sea Watch

International, an out-of-state processing and distribution facility as is reflected in internal memoranda of the Department.

350. The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels in excess of 70 feet in length is based on the defendants' malicious intent to adversely affect plaintiff Sea Watch International as is reflected in internal memoranda of the Department.

351. The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels in excess of 70 feet in length is based on the defendants' bad faith attempt to adversely affect the Harvesting Companies as a result of its commercial ties to Sea Watch International as is reflected in internal memoranda of the Department.

352. The defendants' treatment of LET Vessels in denying the harvesting companies the right to use out-of-state vessels in excess of 70 feet in length is based on the defendants' bad faith attempt to adversely affect LET Vessels as a result of its commercial ties to Sea Watch International as is reflected in internal memoranda of the Department.

353. The defendants' treatment of LET Vessels in denying the Harvesting Companies the right to use out-of-state vessels in excess of 70 feet in length is based on the defendants' bad faith attempt to adversely affect plaintiff Sea Watch International as is reflected in internal memoranda of the Department.

354. The Harvesting Companies (Bay Head, Freeport Sea Clam, Off Shore Diving, PEK Clam Co.) have been harmed in their business operations by the actions of defendants in denying the Harvesting Companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which is in violation of their rights as secured under the Equal Protection

Clause of the 14th Amendment to the United States Constitution.

355.   Plaintiff LET Vessels has been harmed in its business operations by the actions of defendants in denying the Harvesting Companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which is in violation of its rights as secured under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

356.   Plaintiff Sea Watch International has been harmed in its business operations by the actions of defendants in denying the Harvesting Companies the right to replace their vessels with out-of-state vessels owned by LET Vessels, which is in violation of its rights as secured under the Equal Protection Clause of the 14th Amendment to the United States Constitution.

357.   Justiciable causes of action are pleaded as between the respective plaintiffs and the defendants such that the Court should declare the rights and relationships of the parties.

358.   Such violations of the plaintiffs' rights as secured under the Equal Protection Clause of the 14th Amendment to the Constitution are occurring and will continue in the absence of injunctive relief.

359.   Accordingly, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, the plaintiffs are entitled to a declaration that the Seventy-Foot Rule violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Court should permanently enjoin its further application and enforcement.

## AS AND FOR AN TENTH CAUSE OF ACTION
### (42 U.S.C. § 1985 - Attorneys Fees)

360.   Plaintiffs repeat and reallege each and every allegation contained in paragraphs "1" through "359" as if fully set forth herein at length.

361.   The plaintiffs have established or will establish valid claims for relief under the United States

Constitution and other laws of the United States, are entitled to declaratory and permanent injunctive relief for the defendants' violation of their rights, which defendants have purported to accomplish under color of state law, both statutory and regulatory, for which redress may be had pursuant to provisions of 42 U.S.C., § 1983.

362.   The defendants' actions are not substantially justified under law.

363.   Plaintiffs will substantially prevail in their claims against the defendants in defense of their and the public's rights, and are entitled to reasonable attorneys fees and costs of this action, pursuant to the provisions of 42 U.S.C., § 1985, and this Court should so declare.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, Aqua Harvesters, Inc.; Bay Head, Inc.; C. Seaman Seafood, Ltd.; Doxsee Sea Clam Co., Inc.; Edgar Seafood Products Inc.; Fernandez & Family, Inc.; Freeport Sea Clam Co., Inc.; Lady Kim, Inc.; Lyons Fisheries, Inc.; Off Shore Diving Corp.; PEK Clam Co., Inc.; SMJ Products Corporation; St. Peter Dock, Inc.; Verbeke, Inc.; Winter Harbor Brands, Inc.; LET Vessels, LLC; TMT Vessels (NY), LLC; American Pride Seafood, LLC; Atlantic Capes Fisheries, Inc.; Galilean Seafoods, LLC; Oceanside Packers, Inc.; and Seawatch International, Ltd., pray that after due proceedings be had that the Court enter judgment herein, pursuant to the provisions of 28 U.S.C., §§ 2201 & 2202, and 42 U.S.C., § 1983, declaring:

A.   **On the First Cause of Action:**

That the Single Permit Rule (6 N.Y.C.R.R., §§ 43-2.6(b), 43-2.8(e), and 43-3.5(e)) is preempted and violates the rights and authorities granted to fishing vessels that are documented and "fishery" endorsed pursuant to the Shipping Act (46 U.S.C., §§ 106, 12113), and that the application or enforcement of the Single Permit Rule to regulate the use of such vessels in New York's Surf

Clam Fishery is void and shall be permanently enjoined, and;

**B.**     **On the Second Cause of Action:**

That the Residency Rule (6 N.Y.C.R.R., § 43-2.4(d)) is pre-empted and violates the rights

and authorities granted to fishing vessels that are documented and "fishery" endorsed pursuant to the

Shipping Act (46 U.S.C., §§ 106, 12113), and that the application or enforcement of the Residency

Rule to regulate the use of such vessels in New York's Surf Clam Fishery is void and shall be

permanently enjoined, and;

**C.**     **On the Third Cause of Action:**

That the Seventy-Foot Rule (E.C.L., § 13-0349) is pre-empted and violates the rights and

authorities granted to fishing vessels that are documented and "fishery" endorsed pursuant to the

Shipping Act (46 U.S.C., §§ 106, 12113), and that the application or enforcement of the Seventy-

Foot Rule to regulate the use of such vessels in New York's Surf Clam Fishery is void and shall be

permanently enjoined, and;

**D.**     **On the Fourth Cause of Action:**

That the Single Permit Rule (6 N.Y.C.R.R., §§ 43-2.6(b), 43-2.8(e), and 43-3.5(e)) violates

the Commerce Clause of section 8 of Article I of the United States Constitution, and that the

application or enforcement of the Single Permit Rule to regulate or prohibit the use of vessels in New

York's Surf Clam Fishery is void and shall be permanently enjoined, and;

**E.**     **On the Fifth Cause of Action:**

That the Residency Rule (6 N.Y.C.R.R., §§ 43-2.4(d)) violates the Commerce Clause of

section 8, Article I of the United States Constitution, and that the application or enforcement of the

Residency Rule to regulate or prohibit the use of non-New York-owned fishing vessels in New

York's Surf Clam Fishery is void and shall be permanently enjoined, and;

**F.      On the Sixth Cause of Action:**

That the Seventy-Foot Rule (E.C.L., § 13-0349) violates the Commerce Clause, section 8 of Article I of the United States Constitution, and that the application or enforcement of the Seventy-Foot Rule to regulate or prohibit the use of vessels in New York's Surf Clam Fishery is void and shall be permanently enjoined, and;

**G.      On the Seventh Cause of Action:**

That the Residency Rule (6 N.Y.C.R.R., §§ 43-2.4(d)), violates the Privileges and Immunities Clauses of section 2 of Article IV, and section 1 of the Fourteenth Amendment to, the United States Constitution, and that the application or enforcement of the Residency Rule to regulate or prohibit the use of vessels by holders of Surf Clam Permits in New York's Surf Clam Fishery is void and shall be permanently enjoined, and;

**H.      On the Eighth Cause of Action:**

That the Residency Rule (6 N.Y.C.R.R., §§ 43-2.4(d)), and its application by the defendants to regulate or prohibit the use of vessels by holders of Surf Clam Permits vessels owned by non-New York owners in New York's Surf Clam Fishery, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, thereby denying:

    (1)    out-of-state surf clam vessel-owners such as plaintiff LET Vessels the right to ply their trade in New York waters in accordance with federal law and Constitutionally protected rights, and;

    (2)    New York Harvesting Companies the right to earn a living, and;

    (3)    out-of-state processing and distribution plaintiff Sea Watch International the right to earn a living;

all of which is maliciously or in bad faith intended to adversely impact such companies based on

impermissible considerations of the state of residency of the out-of-state vessel owner, is void and shall be permanently enjoined.

### I.      On the Ninth Cause of Action:

That the Seventy Foot Rule (E.C.L., § 13-0349(1)), violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and that the application or enforcement of the Seventy-Foot Rule to regulate or prohibit the use of vessels in excess of seventy feet in length by holders of Surf Clam Permits in New York's Surf Clam Fishery, thereby denying:

(1)      out-of-state surf clam vessel-owners such as plaintiff LET Vessels the right to ply their trade in New York waters in accordance with federal law and Constitutionally protected rights, and;

(2)      New York Harvesting Companies the right to earn a living and;

(3)      out-of-state processing and distribution plaintiff Sea Watch International the right to earn a living;

all of which is maliciously or in bad faith intended to adversely impact such companies based on impermissible considerations of the size of the vessel in question and the state of residency of the out-of-state vessel, is void and shall be permanently enjoined;

### J.      On the Tenth Cause of Action:

That the plaintiffs have substantially prevailed in their causes of action; that the defendants' positions are not substantially justified under law; and that plaintiffs are to be awarded the litigation costs and expenses of this action, including reasonable attorneys' fees and other costs and disbursements, pursuant to the provisions of section 1985 of Title 42 of the United States Code, and that a further hearing date or such other time shall be established for the taking of proof thereupon, and;

That plaintiffs be granted all other and further relief as the Court may deem just and equitable under the circumstances.

Dated: March 1, 2017
      Bellport, New York

Respectfully Submitted,

**J. LEE SNEAD (JLS # 7215)**
*Attorney for Plaintiffs*
144 South Country Road, P.O. Box 489
Bellport, New York 11713
(631) 286-0488